[L.A. No. 30347. In Bank. Nov. 22, 1974.]

ROBERT REYNOLDS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

William O. Carlisle for Petitioner.

Richard S. Buckley, Public Defender (Los Angeles), Dennis A. Fischer and Harold E. Shabo, Deputy Public Defenders, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Joseph P. Busch, District Attorney, Harry B. Sondheim, Jay J. Becker and Arnold T. Guminski, Deputy District Attorneys, for Real Party in Interest.

Byron C. Morton, District Attorney (Riverside), and Ronald S. Smith, Chief Deputy District Attorney, as Amici Curiae on behalf of Real Party in Interest.

**OPINION**

**WRIGHT, C. J.**—Petitioner has been charged by information with the kidnaping, rape, drugging, sexual molestation, and attempted murder of a 10-year-old girl. He is also charged with furnishing drugs to four of his stepdaughters, all minors, and of sexually molesting one of these stepdaughters. Petitioner was held to answer after a lengthy preliminary examination, and following a further hearing pursuant to Penal Code section 1538.5, respondent superior court denied petitioner's motion to suppress evidence. The superior court thereupon issued a discovery order at the request of the People directing petitioner to give the People at least three days' notice in advance of calling any alibi witness at trial. The order further requires that petitioner disclose the names, addresses and telephone numbers of such witnesses. The People were in turn directed to provide petitioner with evidence they might have or uncover which is impeaching of petitioner's proffered alibi witnesses. The superior court's discovery order further provides for the exclusion at trial of the testimony of any witness or other evidence covered by the order which is not in compliance with the order.

Mindful of the expected two- to three-month length of the trial of petitioner, and of a direct conflict in published opinions of the Courts of

Appeal regarding the validity of notice-of-alibi discovery orders,[1] we stayed petitioner's trial and granted his petition for a hearing in this court, issuing our alternative writ of prohibition. ■ We have determined that the superior court erred in issuing its notice-of-alibi order, and herewith issue our peremptory writ of prohibition restraining the enforcement of that order.

We are of the opinion, in accord with the decision of the Court of Appeal in *Rodriguez* v. *Superior Court* (1970) 9 Cal.App.3d 493 [88 Cal.Rptr. 154], that such a procedural innovation as requiring defendants in criminal cases to give advance notice of alibis should be introduced, if at all, only upon the considered judgment of the Legislature. We do not question the validity of our holding in *Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 59-60 [22 Cal.Rptr. 879, 372 P.2d 919], that even in the absence of constitutional mandate or enabling legislation this court has inherent power to provide for the orderly administration of justice through judicially declared rules of criminal discovery. However, complex and closely balanced questions of state and federal constitutional law are presented by a notice-of-alibi order. The gravity of these questions counsels against the exercise of our rule-making power so as to promulgate a notice-of-alibi procedure.

We wish to emphasize that we in no way pass herein on the abstract question of the constitutional validity of a court order, whether or not authorized by the Legislature, which compels an accused to give pretrial notice of an alibi defense. Nevertheless, our decision that it would be inappropriate for us to declare judicially a notice-of-alibi rule does arise from our sensitivity to the constitutional constraints on the power of the courts or the Legislature to require a defendant in a criminal case to reveal to the prosecution in advance of the normal course of trial tangible or intangible trial-related evidence or other material. We accordingly undertake to review the constitutional parameters governing compulsory discovery from a defendant in a criminal case.

In *Jones* v. *Superior Court, supra,* this court gave its sanction to the principle that discovery, even in a criminal case, "should not be a one-way street." (*Id.* at p. 60.) Reviewing the line of decisions beginning with *People* v. *Riser* (1956) 47 Cal.2d 566 [305 P.2d 1] (overruled on other grounds, *People* v. *Morse* (1964) 60 Cal.2d 631, 649 [36 Cal.Rptr. 201,

---

[1]*Rodriguez* v. *Superior Court* (1970) 9 Cal.App.3d 493 [88 Cal.Rptr. 154] (disapproving of notice-of-alibi order). Contra, *People* v. *Hall* (1970) 7 Cal.App.3d 562, 565-567 [86 Cal.Rptr. 504], disapproved on other grounds, *People* v. *Beagle* (1972) 6 Cal.3d 441, 451-452 [99 Cal.Rptr. 313, 492 P.2d 1]. *People* v. *Hall* is hereby further disapproved insofar as it is inconsistent with the views expressed in this opinion.

388 P.2d 33]), which permit criminal defendants extensive discovery against the prosecution,[2] Justice Traynor concluded for the majority in *Jones* that these decisions had gone beyond mere effectuation of criminal defendants' constitutional right to a fair trial. In judicially creating rules of criminal discovery, the court "was not acting under constitutional compulsion but to promote the orderly ascertainment of the truth." (58 Cal.2d at p. 60.)

The court in *Jones* accordingly announced its willingness to require discovery of defendants as well as the prosecution in criminal cases where such discovery does not conflict with the constitutional rights of the accused. In *Jones* the accused was charged with rape, and on the day set for trial had successfully moved for a continuance on the ground that he would present a defense of impotence and wished to marshal supporting medical evidence. The trial court granted the prosecution's motion for the discovery of the names and addresses of all medical witnesses who would testify for the defendant and of all doctors who had treated the defendant prior to trial, the reports of these doctors bearing on his claim of impotence, and X-rays of the injuries alleged to have caused his impotency. The Fifth Amendment not yet having been made applicable to the states by *Malloy v. Hogan* (1964) 378 U.S. 1 [12 L.Ed.2d 653, 84 S.Ct. 1489], the defendant's constitutional attack on the trial court's discovery order was based on the privilege against self-incrimination set forth in article I, section 13, of the California Constitution. The majority in *Jones* upheld the discovery order against this claim of privilege to the extent that the defendant was ordered to identify and produce in advance of trial those witnesses and the evidence which he intended to produce in any event at the trial itself.[3] In so holding—over the vigorous dissent of Justice Peters—the majority relied on decisions in other states rejecting self-incrimination attacks on notice-of-alibi statutes, quoting with approval a commentator's analysis of such statutes as not infringing on the privilege against self-incrimination: " 'Rather, they set up a wholly reasonable rule of pleading which in no manner compels a defendant to give any evidence other than that which he will voluntarily and without compulsion give at trial.' " (58 Cal.2d at p. 61.)

---

[2]See generally *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 535-536 [113 Cal. Rptr. 897, 522 P.2d 305]; Louisell & Wally, Modern Cal. Discovery (2d ed. 1972) page 847 et seq.

[3]The discovery order was held to be violative of the privilege against self-incrimination and the attorney-client privilege insofar as it sought material which the defendant did not intend to disclose at trial. (58 Cal.2d at pp. 60-62.)

Justice Dooling did not reach the constitutional issue, dissenting on the ground that such an innovation was better left to the Legislature.

The "intent to disclose at trial" rationale by which the majority in *Jones* found a defendant's interest in avoiding self-incrimination to be less significant than the courts' interest in orderly procedures for the ascertainment of truth, later led the court seemingly to approve a pretrial discovery order which was unrelated to any particular "affirmative" defense such as impotence or alibi and which required revelation of the identities and expected testimony of *all* defense witnesses. (*People* v. *Pike* (1969) 71 Cal. 2d 595, 605 [78 Cal.Rptr. 672, 455 P.2d 776].) In *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673], the court dealt directly with just such a general pretrial discovery order, overruling *Pike* in that respect (2 Cal.3d at p. 327, fn. 11), and limiting *Jones* "virtually to its facts." (Louisell & Wally, Modern Cal. Discovery (2d ed. 1972) p. 895.) Drawing upon cases of the United States Supreme Court —now directly applicable in the wake of *Malloy* v. *Hogan, supra*—and of California courts, the *Prudhomme* court declared that the privilege against self-incrimination "forbids compelled disclosures which could serve as a 'link in a chain' of evidence tending to establish guilt of a criminal offense; in ruling upon a claim of privilege, the trial court must find that it clearly appears from a consideration of all the circumstances in the case that an answer to the challenged [request] cannot possibly have a tendency to incriminate the witness." (2 Cal.3d at p. 326.) ▪ Accordingly, the "principal element" in determining the validity of a discovery order against the defendant in a criminal case "is not simply whether the information sought pertains to an 'affirmative defense,' [footnote omitted] or whether [the] defendant intends to introduce or rely upon the evidence at trial, but whether disclosure thereof conceivably might lighten the prosecution's burden of proving its case in chief." (*Id.*) The *Prudhomme* court went on to point out that "It requires no great effort or imagination to conceive of a variety of situations wherein the disclosure of the expected testimony of defense witnesses, *or even their names and addresses,* could easily provide an essential link in a chain of evidence underlying the prosecution's case in chief." (Italics added.) (*Id.*)

In contrast to the evident concern in *Prudhomme* over the self-incrimination ramifications of prosecutorial discovery in a criminal case, the United States Supreme Court was little troubled by self-incrimination problems when just three months after *Prudhomme* it upheld Florida's notice-of-alibi rule in *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893]. Noting the then unbroken line of decisions upholding notice-of-alibi procedures (*id.* at p. 83 [26 L.Ed.2d at p. 451]),[4] and stressing the

---

[4]The Supreme Court cited *Jones* as well as notice-of-alibi cases, and Justice Black in dissent charged that the court had "adopt[ed] in its entirety" the "theory" of *Jones,*

petitioner's concession that there would be no constitutional bar to the prosecution's being granted a continuance following the unanticipated presentation of alibi evidence, which continuance would allow the prosecution to seek out evidence in rebuttal to the alibi evidence presented (*id.* at pp. 85-86 [26 L.Ed.2d at p. 452]),[5] the Supreme Court concluded that the state could constitutionally avoid the need for such disruption by requiring pretrial disclosure of an alibi defense and the identities of alibi witnesses.[6]

The Florida notice-of-alibi rule was also found free of due process problems by the *Williams* court. The court noted Florida's liberal rules of criminal discovery on behalf of the defendant, and emphasized that the notice-of-alibi rule there in question, which required the state to give pretrial notice of the identities of the witnesses it would present in rebuttal to the defendant's announced alibi, "is itself carefully hedged with reciprocal duties requiring state disclosure to the defendant." (399 U.S. at p. 81 [26 L.Ed.2d at p. 450].) The court also adverted to the ease with which an alibi may be fabricated and the state's consequently "obvious and legitimate" interest in protecting itself against such a defense. (*Id.*) Pointing to the existence of notice-of-alibi statutes since at least 1927, the court concluded: "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. [Footnote omitted.] We find ample room in that system, at least as far as 'due process' is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence." (*Id.* at p. 82 [26 L.Ed.2d at p. 450].)

In *Wardius* v. *Oregon* (1973) 412 U.S. 470 [37 L.Ed.2d 82, 93 S.Ct. 2208], the Supreme Court indicated that notice-of-alibi rules are more vulnerable to constitutional attack on due process grounds than on self-incrimination grounds. The court invalidated Oregon's notice-of-alibi stat-

---

whose "dangerous implications" he decried. (399 U.S. at pp. 114-115 [26 L.Ed.2d at p. 484].)

The Alaska Supreme Court has since become, apparently, the first and only court in the nation to invalidate on self-incrimination grounds a requirement that a defendant in a criminal case disclose his alibi witnesses in advance of trial. (See fn. 10, *infra.*)

[5]See Traynor, *Ground Lost and Found in Criminal Discovery* (1964) 39 N.Y.U. L.Rev. 228, 248-249.

[6]The court expressly reserved decision, however, whether enforcement of discovery rules through exclusion of otherwise relevant, probative evidence is consistent with the Sixth and Fourteenth Amendments. (399 U.S. at p. 83, fn. 14 [26 L.Ed.2d at p. 451].) See generally Note, *The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense* (1972) 81 Yale L.J. 1342.

ute because neither that statute nor other Oregon law provided the defendant with sufficient reciprocal rights of discovery to make criminal discovery the "two-way street" required by the due process clause's mandate of a "balance of forces between the accused and his accuser." (*Id.* at pp. 474, 475 [37 L.Ed.2d at pp. 87, 88].)[7] The court further stated: "The *Williams* Court was . . . careful to note that 'Florida law provides for liberal discovery by the defendant against the State, and the notice-of-alibi rule is itself carefully hedged with reciprocal duties requiring state disclosure to the defendant.' . . . The same cannot be said of Oregon law. . . . Oregon grants no discovery rights to criminal defendants and, indeed, does not even provide defendants with bills of particulars. More significantly, Oregon, unlike Florida, has no provision which requires the State to reveal the names and addresses of witnesses it plans to use to refute an alibi defense. . . . [¶] . . . It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." (*Id.* at pp. 474-476 [37 L.Ed.2d at pp. 87, 88] [footnotes omitted].)[8]

The *Wardius* court emphasized that the reciprocal rights of discovery necessary to validate a notice-of-alibi statute may not be inchoate. Oregon argued to the court that despite the lack of reciprocity on the face of its notice-of-alibi statute, Oregon courts might well have read the requisite reciprocity into the statute, had the defendant therein complied with the notice-of-alibi order and then sought reciprocal discovery. The Supreme Court acknowledged that it could not predict what the Oregon courts would have done in such a situation, but concluded that "this very lack of predictability" about the extent of discovery available to the defendant was sufficient to invalidate the notice-of-alibi rule. (412 U.S. at p. 477 [37 L.Ed.2d at p. 89].) "[T]he State cannot constitutionally force compliance with its scheme on the basis of a totally unsubstantiated possibility that the statute might be read in a manner contrary to its plain language. Thus, in the absence of fair notice that he would have an opportunity to discover the State's rebuttal witnesses, petitioner cannot be compelled to reveal his alibi defense." (*Id.* at pp. 478-479 [37 L.Ed.2d at pp. 89, 90].)[9]

---

[7]The court noted that "the State's inherent information-gathering advantages suggest that if there is to be any imbalance in discovery rights, it should work in the defendant's favor." (412 U.S. at p. 475, fn. 9 [37 L.Ed.2d at p. 88].)

[8]The omitted footnotes quoted the Oregon Court of Appeals' recent declaration that " 'Oregon's criminal code is almost completely lacking in pretrial discovery procedures,' " and indicated that "The only discovery rights Oregon appears to permit are the rights to view written statements made by state witnesses and by the defendant, in the hands of the police." (412 U.S. at p. 475, fns. 7-8 [37 L.Ed.2d at pp. 87, 88].)

[9]Because of its invalidation of the Oregon notice-of-alibi statute on reciprocity grounds, the court again reserved judgment on the validity of the sanction of excluding

When the discovery order here in issue is viewed in the light of the foregoing authorities it is manifest that the order presents delicate and difficult questions of constitutional law, both state and federal. While *Williams* may have laid to rest the contention that notice-of-alibi procedures are inconsistent with the federally guaranteed privilege against self-incrimination, this privilege is also secured to the people of California by our state Constitution, whose construction is left to this court, informed but untrammelled by the United States Supreme Court's reading of parallel federal provisions.[10] (See *Mental Hygiene Dept.* v. *Kirchner* (1965) 380

---

at trial evidence of an unannounced alibi. (412 U.S. at p. 472, fn. 4 [37 L.Ed.2d at p. 86]. See fn. 6, *supra.*)

[10]In *Scott* v. *State* (Alaska 1974) 519 P.2d 774, the Alaska Supreme Court, faced with the very issue presently before this court, recently held a notice-of-alibi order violative of the Alaska Constitution's privilege against self-incrimination notwithstanding the construction accorded the Fifth Amendment's similar privilege by the United States Supreme Court in *Williams* v. *Florida, supra,* 399 U.S. 78. In so doing, the Alaska court gave apt expression to the function of a state court of last resort in construing state constitutional provisions which parallel federal constitutional provisions:

"In *Baker* v. *City of Fairbanks* [(Alaska 1970) 471 P.2d 386], we acknowledged our responsibility to depart whenever necessary from constitutional interpretations enunciated by the United States Supreme Court and to develop rights and privileges under the Alaska constitution in accordance with our own unique legal background. In particular we stated: 'While we must enforce the minimum constitutional standards imposed upon us by the United States Supreme Court's interpretation of the Fourteenth Amendment, we are free, and we are under a duty, to develop additional constitutional rights and privileges under our Alaska Constitution if we find such fundamental rights and privileges to be within the intention and spirit of our local constitutional language and to be necessary for the kind of civilized life and ordered liberty which is at the core of our constitutional heritage. We need not stand by idly and passively, waiting for constitutional direction from the highest court of the land. Instead, we should be moving concurrently to develop and expound the principles embedded in our constitutional law.' [*Id.,* at pp. 401-402 (fn. omitted).] We are not bound to follow blindly a federal constitutional construction of a fundamental principle if we are convinced that the result is based on unsound reason or logic." (*Scott* v. *State, supra,* 519 P.2d at p. 783.)

The Alaska Supreme Court, like the highest courts of several other states (see fn. 20, *infra*) has been constitutionally vested with formal, quasi-legislative power to promulgate rules of judicial procedure. (Alaska Const., art. IV, § 15.) The Alaska court thus showed no concern in *Scott* about the propriety of its establishing by judicial decision a notice-of-alibi procedure. It viewed the lower court's notice-of-alibi order as within a trial court's broad discretion under rule 16(c) of the Alaska Rules of Criminal Procedure which the Alaska Supreme Court had itself promulgated. The Alaska court accordingly proceeded in *Scott* directly to the constitutional merits of the lower court's order which ordered the defendant to disclose: "(1) the names and addresses of all prospective defense witnesses, other than defendant himself. (2) the production or inspection and copying of any written or recorded statements in defendant's possession of prospective defense or government witnesses, other than defendant himself. (3) advance notice of an alibi defense, together with information

U.S. 194, 198 [13 L.Ed.2d 753, 756, 85 S.Ct. 871]; *California* v. *Krivda* (1972) 409 U.S. 33 [34 L.Ed.2d 45, 95 S.Ct. 32], on remand *sub nom.* *People* v. *Krivda* (1973) 8 Cal.3d 623 [105 Cal.Rptr. 521, 504 P.2d 457]; *Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 716-717 [87 Cal.Rptr. 361, 470 P.2d 345]; *Cardenas* v. *Superior Court* (1961) 56 Cal.2d 273, 275-276 [14 Cal.Rptr. 657, 363 P.2d 889].) The Supreme Court did not hesitate in *Williams* to send defendants with alibi defenses down the "two-way street" mapped out in *Jones* for a defendant making the partially analogous claim of impotence in a rape case; but this court in *Prudhomme* has itself cast doubt on the analogical utility of *Jones*. Of course, *Prudhomme*'s concern for the possible, collaterally incriminatory consequences to an accused of revealing in advance of trial the names of defense witnesses—who if alibi witnesses are especially likely to know the accused personally and hence to assist, unintentionally or not, in the state's investigation of the accused—was in part based on this court's reading of pre-*Williams* federal law. Nevertheless, it cannot be gainsaid that *Prudhomme* put this court on record as being considerably more solicitous of the privilege against self-incrimination than federal law currently requires. Thus, there is no foregone answer to the question we would necessarily face were we to pass on the merits of the superior court's order: whether notice-of-alibi discovery procedures in general are permissible under the California Constitution.

Consideration of the merits of the superior court's order would require us to decide not only this far-reaching issue of state law, but also whether the order is sufficiently reciprocal in scope to pass federal constitutional muster under the *Wardius* test of fundamental fairness. As with the issue of the extent of our state Constitution's guarantee against self-incrimination, adjudication of this federal issue would have repercussions far beyond this case and the particular discovery order now before the court. The text of the order of the superior court,[11] even as orally amplified by that

---

indicating the place or places defendant claims to have been and the names of witnesses upon whom he intends to rely." (519 P.2d at p. 775.)

Agreeing with Justice Black's dissent in *Williams* that the reasoning of the majority therein was unpersuasive, the *Scott* court concluded that this notice-of-alibi order compelled the accused to incriminate himself in all respects save one. The Alaska court did approve requiring an accused to give bare notice of an alibi defense, since "advance notice of an alibi defense is in the nature of any pretrial plea, much like a plea of 'not guilty.' " (519 P.2d at p. 787.) The court refused, however, to require an accused to go beyond giving bare notice of an alibi defense by stating the place or places featured in his alibi. The court did not indicate what sanction would be appropriate if a defendant sought to present an alibi defense at trial without having given prior notice.

[11]The superior court's order was recorded as follows in the minutes of the court:
"People's discovery motion: Counsel for the defendant is ordered to disclose names,

court,[12] fails on its face to meet two of the criteria of fundamental fairness set forth in *Williams* and *Wardius*. First, the order does not require the prosecution to furnish petitioner with the names and addresses of the witnesses the People will put on in rebuttal to petitioner's alibi defense.[13]

addresses and telephone numbers of any alibi witnesses not later than July 1, 1974. Further this is a continuing discovery order and if at a subsequent time the defendant intends to call any alibi witnesses such material must be furnished to the people not less than three days before such such [*sic*] witnesses are called. The defendant is precluded from calling such witnesses unless the defendant has complied with the Court's order and such witness will not be permitted to testify.

"Further, any product of the people, oral or written, of an interview with the defendant's alibi witnesses shall be made available to the defendant within forty-eight hours after being obtained by the prosecution."

[12]In orally making its discovery order, the superior court framed the prosecution's duty of reciprocity as follows:

"It is further the order of this Court that any product of an interview with an alibi witness whose name is supplied to the People by the defense be made available to the defense and I make that order in order to comply with the case of Wardius versus Oregon, United States Supreme Court case decided in 1973.

"I would also order that such material be made available to the defense within 48 hours after it has been obtained by the prosecution, so this still gives you time prior to calling the witness to decide whether you really want to once you know what, if anything, the People have discovered.

"That includes rap sheets, it includes the statement made by the alibi witness or any other matters which the prosecution would be required to disclose as a matter of fundamental fairness to the defendant.

"I hope that is sufficiently specific."

The following day, the court offered to sign a written discovery order if the parties wished to submit one. The deputy district attorney responded: "Your honor, I intended to use the minutes of the Court on that because I know our Court is very accurate." The court replied: "If you are satisfied with the minutes, the oral order speaks for itself. I will modify it, only to the extent of changing the effective date . . . to . . . July the 8th." Counsel for petitioner agreed to this arrangement.

Counsel appearing before this court predictably took differing views of the resultant ambiguity as to the text of the discovery order. Counsel for petitioner stressed the limited language of the order as recorded in the minutes of the court; the district attorney emphasized the superior court's orally expressed determination to comply with *Wardius*.

[13]Two passages in *Wardius* indicate that discovery to the defendant of the identities of the witnesses by which the prosecution will seek to rebut or refute an alibi defense is the sine qua non of the reciprocity constitutionally required of notice-of-alibi procedures.

". . . Oregon grants no discovery rights to criminal defendants, and, indeed, does not even provide defendants with bills of particulars. *More significantly, Oregon, unlike Florida, has no provision which requires the State to reveal the names and addresses of witnesses it plans to use to refute an alibi defense.*" (Italics added.) (412 U.S. at p. 475 [37 L.Ed.2d at p. 87] [fns. omitted; see note 8, *supra*].)

". . . While conceding that Oregon law fails to provide for reciprocal discovery on its face, the State contends that if petitioner had given notice of his alibi defense, *the state courts might have read the Oregon statute as requiring the State to give the petitioner the names and addresses of state witnesses used to refute the alibi defense.*" (Italics added.) (412 U.S. at p. 476 [37 L.Ed.2d at p. 88].)

The Florida notice-of-alibi rule at issue in *Williams* provided that "the prosecuting

Second, the order does not require the prosecution to name with all possible specificity the time and place of the alleged crimes as to which petitioner might offer alibis.[14] Although the court below orally indicated its willingness to comply with *Wardius,* see footnote 12, *supra,* the Supreme Court indicated in *Wardius* that a high degree of "predictability" is required if judicially ordered discovery beyond the text of the order in question is to be relied upon to validate that order. (412 U.S. at pp. 477, 479 [37 L.Ed.2d at pp. 89, 90].)[15] Thus even if the order of the superior court were to be upheld by us as consistent with the California Constitution, we would still have to restrain enforcement of the order absent compliance with our instructions setting forth in detail the reciprocal discovery to be required of the prosecution. In effect, we would have to create judicially a comprehensive notice-of-alibi procedure for California courts.[16]

We see little to recommend our attempting at once to consider the desirability of creating a notice-of-alibi procedure and to pass objectively on the constitutionality of any such procedure which might result. It is

---

attorney shall file and serve upon the defendant the names and addresses (as particularly as are known to the prosecuting attorney) of the witnesses the State proposes to offer in rebuttal to discredit the defendant's alibi at the trial of the cause." (399 U.S. at p. 104 [26 L.Ed.2d at p. 462].)

[14]In a footnote to its opinion in *Wardius,* the Supreme Court indicated that "merely informing the defendant of the time and place of the crime" was "limited reciprocity" which left the prosecution far short of "the sort of reciprocity which due process demands." (412 U.S. at pp. 478-479, fn. 12 [37 L.Ed.2d at p. 90].)

[15]"It is, of course, true that the Oregon courts are the final arbiters of the State's own law, and we cannot predict what the state court might have done had it been faced with a defendant who had given the required notice of alibi and then sought reciprocal discovery rights. But it is this very lack of predictability which ultimately defeats the State's argument. At the time petitioner was forced to decide whether or not to reveal his alibi defense to the prosecution, he had to deal with the statute as written with no way of knowing how it might subsequently be interpreted. Nor could he retract the information once provided should it turn out later that the hoped-for reciprocal discovery rights were not granted." (412 U.S. at p. 477 [37 L.Ed.2d at p. 89].)

[16]Solely on the basis of the order's constitutional shortcomings under *Wardius,* we could, of course, restrain its enforcement absolutely rather than conditionally. A flat prohibition of the enforcement of the order would avoid our having to issue the saving instructions which would by force of precedent judicially write a notice-of-alibi procedure into California law. But such summary action on our part would merely invite the court below and other courts to try again with more explicit reciprocity provisions attached to notice-of-alibi orders. Assuming, arguendo, that we were to find notice-of-alibi procedures consistent in principle with the California Constitution, the ultimate result would be that by an ad hoc process a notice-of-alibi procedure capable of appellate survival would still be judicially written into California law. Touching as it does upon fundamental rights of the accused, we are of the opinion that the ad hoc creation of a notice-of-alibi procedure—with the inevitable inconsistencies of early cases as the procedure evolved—would be even less desirable than our Jovian creation of such a procedure by comprehensive judicial fiat in the context of a single case.

one thing for a court to prescribe judicial procedures *necessary* to protect some fundamental constitutional principle or to effectuate some specific constitutional guarantee of individual liberty. (See, e.g., *People* v. *Rhodes* (1974) 12 Cal.3d 180 [115 Cal.Rptr. 235, 524 P.2d 363]; *People* v. *Vickers* (1972) 8 Cal.3d 451, 461-462 [105 Cal.Rptr. 305, 503 P.2d 1313]; *Bryan* v. *Superior Court* (1972) 7 Cal.3d 575, 586-589 [102 Cal. Rptr. 831, 498 P.2d 1079]; *People* v. *Riser* (1956) 47 Cal.2d 566 [305 P.2d 1]; *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905].) It is quite another thing for a court to design judicial procedures which are in no way required by higher law but which may seem to some socially desirable and perhaps may be *permitted*—at least to some extent—by our state and federal Constitutions. In the former instance, constitutional principles guide the court's hand; in the latter instance constitutional principles may well have to stay the court's hand. Given the difficulty of the constitutional questions posed by notice-of-alibi procedures, it is far better for this court to pass judgment, if and when necessary, on an integrated legislative document than on our own conditional decree by which we might seek to smooth the constitutionally rough edges of the order of the court below.

It should also be noted, in the context of the dichotomy between judicial rule-making inspired or required by constitutional limitations on the power of government, and judicial rule-making which would merely grant to the government rights which it might legislatively claim for itself, that the Legislature has not lacked the opportunity to enact a notice-of-alibi statute. Notice-of-alibi legislation has been the subject of serious debate in California legal circles for nearly half a century.[17] In the last fifteen years alone, five notice-of-alibi bills have been placed before four sessions of the Legislature.[18]

---

[17] "Chief Justice Earl Warren, when district attorney [of Alameda County], stated as follows: 'I am heartily in favor of the provision of law which requires the defendant to give five days notice of intention to rely upon the defense of alibi. I have been in favor of this bill since it was first considered by the Crime Commission and I can see no reason why a defendant who was not present at the time of the commission of the alleged offense should hide the fact from the prosecuting officer or the court. I am sure a law of this kind in California would have a salutary effect.' 1931 CAL. CRIME COMM'N REP. at 10. [See 2 Appendix to J.S. Sen. & Assem. (1933 Reg. Sess.).]

"In 1926, the Section on Criminal Law and Procedure of the California Bar Association recommended the adoption of an alibi statute but the efforts of this Committee, the district attorneys of the State and the California Crime Commission were unavailing when the Legislature met in 1931. CAL. BAR ASSOC. PROC. 248 (1925-1926) and 1931 CAL. CRIME COMM'N REP. at 10." (3 Cal. Law Revision Com. Rep. (1961) at p. J-20, fn. 72. See also 1933 Cal. Crime Com. Rep., at p. 18, in 2 Appendix to Js. of Sen. & Assem. (1933 Reg. Sess.).)

[18] Senator Grunsky introduced alternative notice-of-alibi bills in the 1959 Regular Session (Sen. Bills 530 and 531), both of which were reported without recommenda-

While we draw no inference of the Legislature's affirmative disapproval of notice-of-alibi procedures from the fact that such legislation has repeatedly failed of passage, we also are unable to view the Legislature's treatment of notice-of-alibi procedures as impliedly delegating to this court the responsibility for development of the law relating to prosecutorial discovery of alibis. It may be that relative to fields traditionally left at common law to judicial development, such as the law of torts and contracts governing the civil rights and obligations of private persons inter se, the Legislature's codification of California law and the consequent abolition of the common law entailed no legislative supersession of the historical role of courts in the evolution of legal rules. Where this is the case, legislative apathy or antipathy towards proposals to alter the codified common law may well be seen as confirmatory of the Legislature's desire to leave undisturbed the traditional responsibility of courts under Anglo-Saxon jurisprudence to take account of modern trends in the civil law.

We do not think that like considerations obtain when at issue are the procedures by which one may be convicted of crime, rather than the remedies by which one may recover for a civilly actionable wrong. The former topic is much more closely entwined with constitutional restraints on the state than is the latter. Thus the former topic is more likely to present this court with a conflict between its role as common law rule-maker and its role as constitutional umpire, at least—as already discussed (see page 846, *supra*)—when the court's common law powers are sought to be invoked not so as to effectuate the protections constitutionally guar-

---

tion by the Senate Rules Committee. (1959 Sen. J. p. 4235.) In 1960 the California Law Revision Commission submitted to the Governor and the Legislature an elaborate and thoroughly researched study recommending enactment of a notice-of-alibi statute. (3 Cal. Law Revision Com. Rep. (1961) at p. J-1 et seq.) The commission's proposed statute was introduced by Mr. Bradley in the 1961 Regular Session as Assembly Bill No. 464, but was reported without action by the Committee on Criminal Procedure. (4 Assem. J. (1961 Reg. Sess.) p. 6130.) The State Bar, whose predecessor, the California Bar Association, had endorsed notice-of-alibi legislation in 1926 (see 3 Cal. Law Revision Com. Rep. (1961) at p. J-20, fn. 72), opposed Assembly Bill No. 464 on the ground that it might lead to official harassment of defense witnesses. (*Report of the Committee on Criminal Law and Procedure* (1961) 36 State Bar J. 480, 487.)

In the 1970 Regular Session, Senator Cologne introduced a very brief notice-of-alibi bill, subsequently amended so that save for a change in section numbers it was the verbatim text of the California Law Revision Commission's stillborn proposal of 1961. This bill was reported without action by the Committee on Judiciary. (Sen. Bill No. 1387; 2 Sen. J. (1970 Reg. Sess.) pp. 2592-2594, 3 Sen. J. p. 6006.) Finally, in the 1971 Regular Session Senators Cologne and Deukmejian introduced Senate Bill No. 230, which was identical to the amended version of Senate Bill No. 1387 in the 1970 session. Senate Bill No. 230 was passed by 31 votes to none by the Senate (1 Sen. J. (1971 Reg. Sess.) p. 645), but was reported without action by the Assembly's Committee on Criminal Justice. (7 Assem. J. (1971 Reg. Sess.) p. 12675.)

anteed to an otherwise helpless accused, but to give the state the full benefit of the legislative leeway constitutionally accorded it.

It is of interest in this regard that it appears that no jurisdiction has ever adopted a notice-of-alibi procedure by the common law mechanism of judicial decision.[19] In the four states in which a notice-of-alibi procedure has been adopted by judicial rule rather than by statute, the supreme court of each state has been vested by its state's constitution with quasi-legislative power over judicial procedure,[20] and in each of these states the notice-of-alibi procedure was formally promulgated not decisionally but pursuant to the promulgating court's special constitutional power over judicial procedure.[21] This has also been the approach of the

[19]In addition to Florida, the Supreme Court in *Williams* listed 15 states which have notice-of-alibi procedures. (See 399 U.S. at p. 82, fn. 11 [26 L.Ed.2d at p. 450].) Of these 16 states, only Arizona, Florida, New Jersey and Pennsylvania require pretrial notice of an alibi defense through judicially promulgated rules of procedure rather than by statutes. (See fn. 21, *infra*.) The Supreme Court's list of notice-of-alibi jurisdictions in *Williams* conforms to those in Epstein, *Advance Notice of Alibi* (1964) 55 J. Crim. L. C. & P. S. 29, 30, and 6 Wigmore, Evidence (3d ed. 1940) section 1855b, at pages 419-421, footnote 2, but Wigmore also lists the territory of Alaska as having enacted in 1935 a notice-of-alibi statute (but see fn. 10, *supra*), and the State of Washington as having enacted in 1925 a statute requiring a defendant to provide the prosecution with a list of witnesses to be called at trial. To each list must be added the Oregon notice-of-alibi statute invalidated in *Wardius* (see 412 U.S. at p. 472, fn. 3 [37 L.Ed.2d at p. 86]), which had been enacted in 1969. (See *State* v. *Wardius* (1971) 6 Ore.App. 391 [487 P.2d 1380, 1383].)

[20]The Arizona Constitution, article 6, section 5, provides in pertinent part: "The Supreme Court shall have: . . . 5. Power to make rules relative to all procedural matters in any court." (1 Ariz. Rev. Stats. Ann. (West's ed. 1956, Supp. 1974).)

The Florida Constitution, article 5, section 2(a), provides in pertinent part: "The supreme court shall adopt rules for the practice and procedure in all courts. . . . These rules may be repealed by general law enacted by two-thirds vote of the membership of each house of the legislature." (26 Fla. Stats. Ann. (West's ed. 1970, Supp. 1974).)

The New Jersey Constitution, article 6, section 2, paragraph 3, provides in pertinent part: "The Supreme Court shall make rules governing the administration of all courts in the State, and subject to the law, the practice and procedure in all such courts. . . ." (N.J. Stats. Ann. (West's ed. 1971).)

The Pennsylvania Constitution, article 5, section 10(c), provides in pertinent part: "The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts . . . if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant . . . . All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions." (Pa. Stats. Ann. (Purdon ed. 1969).) Prior to this constitutional grant to the Pennsylvania Supreme Court of rule-making power over judicial procedure, the Pennsylvania Supreme and Superior Courts had been legislatively delegated that power. (See 17 Pa. Stats. Ann. § 2084 (Purdon ed. 1962).)

[21]See Arizona Rules of Criminal Procedure rule 15.2(b) (17 Ariz. Rev. Stats. Ann. (West's ed. 1973)); Florida Rules of Criminal Procedure rule 3.220 (33 Fla. Stats. Ann. (West's ed. 1967, Supp. 1974)), New Jersey rule 3:11-1 & 2 (Rules Governing

United States Supreme Court, which has been explicitly vested by statute with the power to promulgate rules of procedure, subject to congressional disapproval. (18 U.S.C. § 3771.) The Supreme Court has not invoked its inherent supervisory powers over the federal courts to introduce a notice-of-alibi rule (cf. *McNabb* v. *United States* (1943) 318 U.S. 332, 340-341 [87 L.Ed. 819, 823-825, 63 S.Ct. 608]; *Thiel* v. *Southern Pacific Co.* (1946) 328 U.S. 217, 225 [90 L.Ed. 1181, 1187, 66 S.Ct. 984, 166 A.L.R. 1412]), but rather has incorporated such a rule in its proposed amendments to the Federal Rules of Criminal Procedure.[22]

■ This court has not been vested with formal, quasi-legislative, rule-making power, either by the California Constitution or the Legislature.[23] We accordingly conclude that due regard for this court's function as constitutional adjudicator, and solicitude for this state's governmental scheme of shared legislative and judicial responsibility for the sound administra-

---

Cts. of N.J. (West's ed. 1973)); Pennsylvania Rules of Criminal Procedure, rule 312 [suspended June 29, 1973 pending further consideration by the Pennsylvania Supreme Court in light of *Wardius*] (19 Pa. Stats. Ann. App. (Purdon ed. 1964, Supp. 1974)).

[22]By proposed rules 12.1 and 12.2, defendants in criminal cases would be required to give pretrial notice of both an alibi and a "defense based upon mental condition." By proposed rule 16 the prosecution would have the right to discover the names of the witnesses which defendants intend to call at trial. (See Proposed Amendments to Federal Rules of Criminal Procedure for the United States District Courts (1974) 62 F.R.D. 271, 292-298, 304-317. See generally Note, *Prosecutorial Discovery under Proposed Rule 16* (1972) 85 Harv.L.Rev. 994.)

Significantly, Congress has given notice that it will subject the proposed amendments to the Federal Rules of Criminal Procedure to more than passing scrutiny. A special statute has been enacted postponing until August 1, 1975, the date on which the amendments will become effective absent further congressional action. (P.L. 93-361, July 30, 1974, 15 Crim.L.Rptr. 2460 (1974).)

[23]The only body outside the Legislature accorded an approximation of such quasi-legislative, rule-making competence is the Judicial Council, created by article VI, section 6, of the California Constitution and empowered thereby, inter alia, to "adopt rules for court administration, practice and procedure, not inconsistent with statute." Due to the express subordination of the council's rules to statutory law, however, the council's rule-making charter is considerably less comprehensive than that of the four state supreme courts which have promulgated notice-of-alibi procedures by formal rule. (See fns. 19-20, *supra.*) The constitutional grant of rule-making power to the Pennsylvania Supreme Court expressly states that rules so made shall prevail over inconsistent statutes. (Pa. Const., art. 5, § 10(c). See fn. 20, *supra.*) That rules of procedure are proof against inconsistent statutes has been established by judicial construction of the relevant constitutional grants of power in the other three jurisdictions. See *School Board of Broward County* v. *Surette* (Fla. 1973) 281 So.2d 481, 483; *Arizona Podiatry Ass'n.* v. *Director of Insurance* (1966) 101 Ariz. 544, 546 [422 P.2d 108]; *George Siegler Co.* v. *Norton* (1952) 8 N.J. 374, 381-382 [86 A.2d 8].

We of course offer no opinion as to the validity of a notice-of-alibi rule if promulgated by the Judicial Council.

tion of justice, render it inappropriate for us to create by judicial decision a notice-of-alibi procedure for California courts.

Let the peremptory writ of prohibition issue as prayed.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Burke, J.,* concurred.

The petition of the real party in interest for a rehearing was denied December 26, 1974, and the opinion was modified to read as printed above.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.