[No. A056943. First Dist., Div. One. May 13, 1993.]

In re AMBER S. et al., Persons Coming Under the Juvenile Court Law.
DEPARTMENT OF SOCIAL SERVICES OF THE CITY AND COUNTY
OF SAN FRANCISCO, Plaintiff and Respondent, v.
ARMANDO S., Defendant and Appellant.

## COUNSEL

Howard J. Specter, under appointment by the Court of Appeal, for Defendant and Appellant.

Louise H. Renne, City Attorney, Loretta M. Giorgi and Charlotte Siggins, Deputy City Attorneys, for Plaintiff and Respondent.

## OPINION

**STRANKMAN, P. J.**—Armando S. appeals from an order declaring his two daughters dependent children of the court pursuant to Welfare and Institutions Code section 300, subdivisions (b) and (d).[1] We hold that the juvenile court had the inherent power to order use of one-way closed-circuit television to take the testimony of the minors outside the presence of their parents, in order to ensure its truthfulness, notwithstanding the absence of any express statutory authorization for the procedure in dependency proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

The Department of Social Services of the City and County of San Francisco (the Department) petitioned to have four-year-old Danielle S. and five-year-old Amber S. declared dependents under section 300, subdivisions (b) and (d). As amended, the petition alleged that appellant had sexually molested his children and that their mother (Lisa S.) had failed to protect them, in that she was unable to understand the danger of the ongoing molestation. It also alleged that, although the mother had initiated contact with the Child and Adolescent Sexual Abuse Resource Center (CASARC) concerning the most recent report of sexual abuse, she failed to take the minors to a physical examination, which resulted in involvement by the San Francisco Police Department. The mother admitted the allegations of the amended petition which pertained to her, and the court found the children to be persons described by section 300, subdivision (b).

A contested jurisdictional hearing was held on the allegations involving appellant. The court granted the Department's motion to hear the minors' testimony in chambers outside the presence of their parents, as is authorized by section 350, subdivision (b). In addition to the court and the minors, four attorneys (representing the Department, the minors, the mother, and appellant), a social worker, and a court reporter were at the initial in-chambers hearing.

When it appeared that neither minor was willing to testify in the presence of so many adults, the Department asked the court to consider the possibility of utilizing closed-circuit television. Appellant objected.

The trial court ordered the use of closed-circuit television to take the minors' testimony and issued a written decision explaining its ruling. The court noted its statutory authority both to "control all proceedings during the

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts," and to take the testimony of minors in chambers, outside the presence of the parents, when necessary to ensure truthful testimony. (§ 350, subds. (a), (b); see also Cal. Rules of Court, rule 1412(a), (c).)[2] The trial court found that Amber and Danielle were unable to testify even in chambers because they were intimidated by the number of adults present, and concluded that closed-circuit television should be used to ensure the minors' truthful testimony. The court acknowledged appellant's right to confront and cross-examine witnesses, but concluded that the procedure adopted would adequately protect that right.

One-way closed-circuit television was used to take the testimony of each minor in chambers. During each minor's testimony, the only other persons present were the attorney questioning her, the social worker, and the court reporter. The trial court, the parties, and the other attorneys contemporaneously viewed the testimony from the courtroom; the minors were not able to see those watching.

The court also heard testimony from the Department's social worker, the physician who examined the children, the mother, and the intake counselors at CASARC who interviewed the children. At the conclusion of the hearing, the court found true the following amended allegations of the petition: (1) appellant had sexually molested the minors on at least one occasion, penetrating the vagina and/or anus with a foreign object; (2) physical examinations of Amber resulted in findings consistent with sexual abuse; and (3) there were two previous child emergency service referrals in 1989 and 1991 regarding possible sexual abuse of the minors. The court found the minors to be persons described by section 300, subdivision (d).

At the dispositional hearing, the court adjudged the minors dependent children and placed them in their mother's home; it ordered that appellant was not to receive visitation until further order of the court. Appellant filed a timely notice of appeal; the mother did not appeal.[3]

## DISCUSSION

Penal Code section 1347 authorizes the court in any criminal proceeding to order use of closed-circuit television to take the testimony of

---

[2]Section 350, subdivision (b), provides in relevant part: "The testimony of a minor may be taken in chambers and outside the presence of the minor's . . . parents, if the minor's . . . parents are represented by counsel, the counsel is present and any of the following circumstances exist: [¶] (1) The court determines that testimony in chambers is necessary to ensure truthful testimony. [¶] (2) The minor is likely to be intimidated by a formal courtroom setting. [¶] (3) The minor is afraid to testify in front of his or her . . . parents. [¶] After testimony in chambers, the . . . parents . . . may elect to have the court reporter read back the testimony or have the testimony summarized by counsel for the parent or parents."

[3]Later the minors were removed from their mother's custody and placed in foster care.

a minor alleged to be the victim of a sexual offense, provided several conditions are satisfied and a prescribed procedure is followed. But there is no similar statute explicitly permitting the procedure in civil dependency proceedings. Appellant contends that absent specific statutory authority, the court had no power to order use of closed-circuit television in this case. We disagree.

We preface our discussion by emphasizing what is not at issue in this appeal. Because this case is not a criminal prosecution, it does not involve the impact of the use of closed-circuit television testimony on the express right of confrontation guaranteed by the federal and state Constitutions to criminal defendants. (See generally, *Maryland* v. *Craig* (1990) 497 U.S. 836 [111 L.Ed.2d 666, 110 S.Ct. 3157].) Although a parent in a civil dependency proceeding does have a constitutional due process right to confront and cross-examine witnesses (*In re Malinda S.* (1990) 51 Cal.3d 368, 383, fn. 16 [272 Cal.Rptr. 787, 795 P.2d 1244]), appellant does not claim any violation of that right. Instead, the only question is the trial court's power to act despite the lack of statutory authority.

All courts have inherent powers which enable them to carry out their duties and ensure the orderly administration of justice. The inherent powers of courts are derived from article VI, section 1 of the California Constitution and are not dependent on statute. (*Walker* v. *Superior Court* (1991) 53 Cal.3d 257, 266-267 [279 Cal.Rptr. 576, 807 P.2d 418]; see *Millholen* v. *Riley* (1930) 211 Cal. 29, 33-34 [293 P. 69].) These powers entitle courts to " '. . . adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute or by rules adopted by the Judicial Council.' [Citation.]" (*Citizens Utilities Co.* v. *Superior Court* (1963) 59 Cal.2d 805, 812-813 [31 Cal.Rptr. 316, 382 P.2d 356].) Thus, a trial court has the inherent authority to create a new form of procedure in a particular case, where justice demands it. (*Cottle* v. *Superior Court* (1992) 3 Cal.App.4th 1367, 1376-1378 [5 Cal.Rptr.2d 882]; *Asbestos Claims Facility* v. *Berry & Berry* (1990) 219 Cal.App.3d 9, 19 [267 Cal.Rptr. 896].) " 'The . . . power arises from necessity where, in the absence of any previously established procedural rule, rights would be lost or the court would be unable to function.' [Citation.]" (*James H.* v. *Superior Court* (1978) 77 Cal.App.3d 169, 175-176 [143 Cal.Rptr. 398] [juvenile court had inherent power to hold a competency hearing despite absence of express statutory authority].)

Although broad in scope, this inherent power to fashion novel procedures is not unlimited. A court cannot adopt an innovative rule or procedure without carefully weighing its impact on the constitutional rights of the

litigants. ■ Therefore, before improvising a procedure in juvenile dependency proceedings, the court must consider the primary objective of the proceeding, which is the promotion of the best interests of the child, but it must also weigh and protect the constitutional rights of the parents which necessarily are implicated. *In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1085-1089 [10 Cal.Rptr.2d 813], and *In re Mary S.* (1986) 186 Cal.App.3d 414, 417-423 [230 Cal.Rptr. 726], are illustrative.

The juvenile court in *In re Jennifer J.*, *supra*, 8 Cal.App.4th 1080, refused to order testimony from a minor at a hearing terminating parental rights, based on its conclusion that requiring the testimony would be psychologically damaging to the minor and of little benefit in resolving the issues. The reviewing court conceded the relevance of the minor's testimony and the statutory right of the parents to call and examine witnesses and compel their attendance; it also acknowledged that no statute or rule specifically authorized exclusion of all testimony from a minor to spare her psychological damage. Nevertheless, the court held that because the overriding objective of the proceeding was the preservation of the child's best interests, the trial court had the power to exclude such testimony in a particular case, provided its decision was made after carefully weighing the effect of its exclusion on the fundamental rights of the parents. (*Id.*, at pp. 1086-1089.)

*In re Mary S.*, *supra*, 186 Cal.App.3d 414, also confirms the inherent power of courts in dependency proceedings to formulate procedures not specifically authorized by statute. After the minors in *Mary S.* testified that they would be afraid to testify in front of their parents, the trial court permitted them to testify in chambers, outside their parents' presence but in the presence of all counsel. The version of section 350 then in effect did not provide for in-chambers testimony. Emphasizing the trial court's obligation to conduct the proceedings in the best interests of the child, the reviewing court concluded that the procedure was proper. The court acknowledged the parents' due process and statutory rights to cross-examine and confront witnesses, but concluded that under the circumstances, the parents' rights were protected adequately by their counsel's cross-examination of the children. (*Id.*, at pp. 422-423.)

Despite the foregoing authority, appellant insists that the trial court could not institute a new procedure for taking evidence without specific statutory authorization. He relies on *People* v. *Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534 [177 Cal.Rptr. 437, 528 P.2d 45], 23 A.L.R.4th 776], *Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834, and *Hochheiser* v. *Superior Court* (1984) 161 Cal.App.3d 777 [208 Cal.Rptr. 273].

*Collie* and *Reynolds* both involved discovery orders in criminal cases fashioned by the trial court and directed against the defendant, and for which

no statutory authority existed. In both cases, the Supreme Court recognized the inherent power of courts to fashion discovery orders, but concluded that the orders at issue should not have been judicially created. Because the orders raised complex and serious constitutional questions, the subject was left more appropriately to the Legislature for initial consideration. (*People* v. *Collie, supra*, 30 Cal.3d at pp. 51-56; *Reynolds* v. *Superior Court, supra*, 12 Cal.3d at pp. 837-850.)

In *Hochheiser* v. *Superior Court, supra*, 161 Cal.App.3d 777, a criminal case involving charges of lewd conduct on a minor, the trial court granted the prosecutor's request to permit the child victim to testify via closed-circuit television. There was no statutory authority for the order, as Penal Code section 1347 had not yet been enacted. Relying on *Collie* and *Reynolds*, the reviewing court held that absent explicit enabling legislation, the trial court had exceeded its authority. The court characterized the use of closed-circuit television in a criminal case as "constitutionally questionable" and concluded that the gravity of the constitutional issues implicated made it inappropriate for a trial court to depart so drastically from established procedures. (*Hochheiser* v. *Superior Court, supra*, at pp. 783-788.)[4]

These cases demonstrate that a trial court cannot adopt an innovative rule without taking into account its effect on the constitutional rights of the parties, and that a court should be particularly reluctant to use a novel procedure which is of dubious constitutional validity. But they do not support the proposition that in the absence of statutory authorization, the juvenile court in this case had no inherent power to order the use of closed-circuit television. As we already have emphasized, appellant does not claim that his due process or any other constitutional rights were violated in this case; thus the concerns which prompted the judicial restraint in *Reynolds, Collie*, and *Hochheiser* simply are not present.

The primary objective of these dependency proceedings was to protect and promote the best interests of the minors. The trial court had inherent power to utilize a new form of procedure if necessary to achieve that objective, as well as the express statutory authority to take the testimony of the minors in chambers, outside the presence of the parents. After finding that use of

---

[4]Most of the *Hochheiser* court's doubts about the constitutionality of closed-circuit television in criminal trials have now been resolved. In *Maryland* v. *Craig, supra*, 497 U.S. 836, the Supreme Court held that the confrontation clause does not prohibit categorically a child witness in a child abuse case from testifying against the defendant at his criminal trial, outside his physical presence, by one-way closed-circuit television. The Supreme Court held that if the state makes an adequate showing of necessity, its interest in protecting child witnesses from the trauma of testifying in such cases is sufficiently important to justify the use of a procedure such as closed-circuit television. (*Id.*, at pp. 857-860 [111 L.Ed.2d at pp. 686-688].)

in-chambers testimony and closed-circuit television was necessary to ensure the truthfulness of the minors' testimony, the court carefully weighed the effect of the procedure on appellant's due process rights of confrontation and cross-examination. The court noted that in-chambers testimony outside the presence of the parents is constitutionally permissible in dependency proceedings (*In re Mary S.*, *supra*, 186 Cal.App.3d at pp. 417-423) and properly concluded that contemporaneous televising of that testimony would provide even more, not less, protection for the parents' rights. Under all these circumstances, the court's order was an appropriate exercise of its authority.

## DISPOSITION

The judgment is affirmed.

Newsom, J., and Stein, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 29, 1993.