[S.F. No. 23272. In Bank. Sept. 19, 1975.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
CARL W., a Minor, Real Party in Interest.

272

## COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Harriet Wiss Hirsch, Deputy Attorneys General, for Petitioner.

Joseph P. Busch, District Attorney (Los Angeles), Harry B. Sondheim and Jay J. Becker, Deputy District Attorneys, as Amici Curiae on behalf of Petitioner.

Sheldon Portman, Public Defender, Leonard P. Edwards, Frank D. Berry, Jr., and Philip H. Pennypacker, Deputy Public Defenders, for Real Party in Interest.

## OPINION

SULLIVAN, J.—On December 17, 1974, a petition was filed in the juvenile court alleging that real party in interest Carl W. comes within the provisions of section 602 of the Welfare and Institutions Code and should be adjudged a ward of the court. The petition went on to charge in four paragraphs that the minor had violated Penal Code sections 187 .

(murder) and 288 (lewd or lascivious act upon the body of a child under 14), and Vehicle Code sections 10851 (auto theft) and 20002, subdivision (a) (misdemeanor hit and run). The minor denied each of the charging allegations.

On January 21, 1975, prior to the jurisdictional hearing, counsel for the minor moved that the matter be tried by a jury. The motion was fully briefed and argued by counsel for the minor and the deputy district attorney representing the People, and on January 27, 1975, the juvenile court denied the motion for a trial by jury but ordered that an advisory jury be empaneled "to aid and assist the court in the adjudicative stage only." It was further ordered that an agreement by at least three-fourths of the jury would be required to render an advisory verdict and that the number of peremptory challenges should be the same as is fixed by statute in civil proceedings.

The People seek a writ of mandate to compel the juvenile court to vacate the aforesaid orders. We issued an alternative writ and an order staying all further proceedings pending our determination of the matter.

We observe at the outset that this is not a case of constitutional dimension. As all parties hereto are fully aware, neither the state nor the federal Constitution guarantees a jury trial in a juvenile proceeding. (*McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976]; *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 376 [93 Cal.Rptr. 752, 482 P.2d 664]; *In re Daedler* (1924) 194 Cal. 320, 332.[228 P. 467]; *In re T. R. S.* (1969) 1 Cal.App.3d 178, 181-182 [81 Cal.Rptr. 574].) Rather, we here face the narrow question whether a juvenile court in this state has the power to empanel an *advisory* jury to assist it in resolving factual issues involved in the adjudicatory or jurisdictional (as opposed to the dispositional) phase of proceedings brought before it pursuant to section 602 of the Welfare and Institutions Code.[1] The court in the instant case was of the view that such a power not only had a firm inherent basis in the exercise of equitable jurisdiction but also was included within the broad statutory grant relating to the control and conduct of juvenile proceedings. (§ 680.) Looking to particular circumstances of the case which were thought to warrant the exercise of that

---

[1]Hereafter, unless otherwise indicated, all section references are to the Welfare and Institutions Code.

power, the court chose to do so. The People, joined by amicus curiae, urge that no such power exists.[2]

## I

Section 680, the statute pursuant to which the juvenile court purported to act in this case, provides as follows: "The judge of the juvenile court shall control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought. *Except where there is a contested issue of fact or law,* the proceedings shall be conducted in an informal nonadversary atmosphere with a view to obtaining the maximum cooperation of the minor upon whose behalf the petition is brought and all persons interested in his welfare with such provisions as the court may make for the disposition and care of such minor." (Italics added.) The minor in this case urges that the juvenile court correctly determined that its power to "control [the] proceedings . . . with a view to the . . . effective ascertainment of the jurisdictional facts" necessarily included a power to empanel an advisory jury in order to assist in the determination of "contested issue[s] of fact or law." The People, along with amicus curiae, strenuously dispute this conclusion.

Reviewing the history of juvenile court law in general and California juvenile court law in particular, the People and amicus curiae urge that the trial of juvenile matters by a jury is both contrary to the spirit of the law and inconsistent with its express provisions. Significant reliance is placed upon the two-part report of the Governor's Special Study Commission on Juvenile Justice (hereafter Commission) which was issued in 1960 and was the basis of much of our present juvenile court law, including section 680. It is first pointed out that in part II of the report (i.e., that part entitled "A Study of the Administration of Juvenile Justice in California") specific reference is made to the question of juries in juvenile matters, and that this reference rejects the use of the jury

---

[2] In *McKeiver* v. *Pennsylvania, supra,* 403 U.S. 528, the United States Supreme Court, while holding that there was no right to a jury trial guaranteed by the federal Constitution in juvenile cases, pointed out: "There is, of course, nothing to prevent a juvenile court judge, in a particular case where he feels the need, or when the need is demonstrated, from using an advisory jury." (*Id.,* at p. 548 [29 L.Ed.2d at p. 662].) We understand this to mean that there is nothing *in the federal Constitution* to prevent such a procedure. Clearly the question remains whether, under the law of any particular state, juvenile court judges possess inherent or statutory powers to do what the federal Constitution does not prevent.

system in juvenile proceedings.[3] Secondly, we are urged to note that, judging from the recommendations made by the Commission in part I of the report (i.e., that part entitled "Recommendations for Changes in California's Juvenile Court Law"), section 680 was intended not to expand the powers of juvenile court judges in the area of fact-finding techniques but rather was meant only to relate to the adoption and use by such judges of certain legal rules of procedure and evidence which had not been applied with uniformity in the past.[4] When these two points are considered together, it is urged, it becomes clear that the

[3]The indicated reference reads in full as follows:

"California's Juvenile Court Law does not provide for a jury trial in the juvenile court. In a few states, however, juvenile court laws contain provisions for jury trials in contested cases. The generally held view, shared by the [C]ommission and all of California's juvenile court judges, is that the jury system is incompatible with the philosophy of the juvenile court law. [¶] In the survey, the 25 judges from the larger counties who were interviewed were asked their views on jury trials for contested delinquency cases in the juvenile court. All 25 judges stated they were opposed to such trials. Their comments suggested that jury trials would be in direct conflict with juvenile court philosophy, and would actually destroy the protective purpose of the court. Some judges also noted that court action taken to declare wardship is not a criminal proceeding and that jury trials would attract much publicity and do much to eliminate the confidentiality which is necessary for effective juvenile court proceedings. [¶] Two judges stated that a jury trial might be afforded to the minor who earnestly desires such a hearing by remanding him for trial to the criminal court. They were opposed, however, to conducting jury trials in the juvenile court." (Governor's Special Study Commission on Juvenile Justice, pt. II, A Study of the Administration of Juvenile Justice in California (1960) p. 19.)

[4]Recommendation No. 11, upon the basis of which the Commission recommended the passage of section 680 (as well as sections 678, 701, and 702—the latter two of which have since been amended) provided: "The juvenile court law should set forth minimum procedural rules as outlined in the comments accompanying this recommendation." The Commission's comments, with insignificant deletions, were as follows: "A characteristic of California's juvenile courts is the pronounced absence of uniformity of court procedures. This is a natural consequence of the extremely vague procedural references in the present law, as exemplified by Section 732 of the W & I Code which merely states that 'the (juvenile) court shall proceed to hear and dispose of the case in a summary manner.' Another limited procedural reference is contained in Section 721.5 of the W & I Code, which states that civil rules 'relating to variance and amendment of pleadings in civil actions shall apply to (juvenile court) petitions and proceedings.' Obviously, neither of these two sections provide a firm basis for juvenile court procedures. . . .

"The problem in attempting to establish acceptable juvenile court procedures is to attain a working balance between two essential objectives—first, preserving the guarantee of due process to the minor; and second, establishing an informal court atmosphere so that potentially harmful effects of the proceedings are minimized and the minor's receptivity to treatment is encouraged.

"The Commission believes that these objectives can be attained by applying rules of evidence routinely observed in the trial of any other cause in a court of law, *with one important modification*, that such rules are to be applied only to test sufficiency of evidence and not to be applied as rules of admissibility. Thus, any matter relevant and material to the past or present conduct, welfare, or care of the minor, and any matter material and relevant to the acts or circumstances which are alleged to bring him within the court's jurisdiction, should be received in evidence. However, competent evidence,

Commission did not contemplate the use of juries in juvenile proceedings, and that the subsequent passage of section 680, pursuant to the recommendations of the Commission, in no way was intended to authorize a juvenile court to empanel an advisory jury to assist in the determination of factual issues.

We agree with the People and amicus curiae that the 1960 report of the Commission should be given significant weight in determining the intent of the Legislature with respect to section 680. ■ "Reports of commissions which have proposed statutes that are subsequently adopted are entitled to substantial weight in construing the statutes. [Citations.] This is particularly true where the statute proposed by the commission is adopted by the Legislature without any change whatsoever and where the commission's comment is brief, because in such a situation there is ordinarily strong reason to believe that the legislators' votes were based in large measure upon the explanation of the commission proposing the bill." (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508]; see also *Holmes* v. *City of Oakland* (1968) 260 Cal.App.2d 378, 385, fn. 2 [67 Cal.Rptr. 197].) ■ It is notable, however, that in adopting section 680 the Legislature, by Senate amendment, made a change in the bill proposed by the Commission which must be considered significant: it added to the second sentence of the bill the introductory clause (italicized in our quotation of § 680) "[e]xcept where there is a contested issue of fact or law." (See 1 Sen. J. (1961 Reg. Sess.) p. 1548.) Thus, whereas the second

not subject to timely objection by competent counsel, must be adduced to support a finding of wardship.

"All of the reasons for employing rules of evidence in other judicial proceedings, e.g., to insure truthful, reliable, and fair testimony, apply with equal force to a hearing on a minor's delinquency or a hearing in which a child may be removed from his family because of parental neglect.

"The Commission also suggests that accomplice testimony should be surrounded with the usual safeguards and that no finding should be made upon the uncorroborated *extra-judicial* admission or confession of the minor unless he is actually represented by counsel at the hearing.

"On the other hand, the Commission sees no valid reason for requiring the degree of proof customary in criminal cases. It is our opinion that requiring proof of the jurisdictional facts by a preponderance of evidence will sufficiently safeguard the rights of the minor so long as the court scrupulously observes the presumptions of lawful conduct and circumstance until the allegations are actually proven in open hearing.

"It is the Commission's further opinion that an informal court atmosphere can be maintained if the recommended rules of evidence are applied. This has amply been demonstrated in those juvenile courts which presently observe rules of evidence when issues are contested." (Governor's Special Study Commission on Juvenile Justice, pt. I, Recommendations for Changes in California's Juvenile Court Law (1960) pp. 29-30.) (Italics in original.)

sentence as proposed by the Commission provided in effect that *in all cases* the proceedings should be conducted in an informal nonadversary atmosphere, the Legislature, by adding the language in question, clearly indicated that more formality should be observed when there was a contested factual or legal issue.

We do not consider that the above amendment is by itself dispositive of the question before us. But we think that it is a factor of substantial significance when considered in the light of the broad language of section 680 as it relates to the powers and responsibilities of the juvenile court judge at the jurisdiction hearing,[5] the growing practice of holding formal jurisdiction hearings where the disposition hearings remain informal,[6] and the rather inconclusive comments of the Commission relative to the use of juries. Assessing the above amendment therefore against this backdrop, we are unable to discern any intent on the part of the Legislature to foreclose the judge from empanelling an advisory jury at the jurisdiction hearing in a contested case when, in the exercise of a sound discretion, he determines that such use of a jury will assist him in "the expeditious and effective ascertainment of the jurisdictional facts." (§ 680.) Looking to the comments of the Commission we find that those speaking directly to the use of juries (set forth in fn. 3, *ante*) while indicating disapproval of the institution of a jury *system* in juvenile cases, do not speak directly to the question of the use of *advisory juries* in cases thought by the court to warrant them. More importantly, we observe that the Commission's comment expressly notes that juries are used in some states "in contested cases." By its amendment of the Commission version of section 680 to indicate that the goal of informality should be accorded less emphasis in contested cases, the Legislature might well be considered to have disassociated itself from the Commission's misgivings concerning the use of juries in cases which were to be contested.

The Commission's comment relating specifically to section 680 (set forth in fn. 4, *ante*) does little to dispel this impression. Although it

[5] Although section 680 has general application to "all proceedings during the hearings," the question before us is confined to the first stage of a two-stage hearing (§ 701) and to the ascertainment of facts at the jurisdiction hearing.

[6] "[T]he practice in the past for all hearings was to conduct them with extreme informality. The tendency in more recent years is to be informal and at the same time maintain the general atmosphere and dignity of a court proceeding. In practice, jurisdiction hearings have become increasingly formal and disposition hearings have remained less formal. Many judges conduct *contested jurisdiction hearings* just like any other criminal (§ 601 or § 602) or civil (§ 600) trial." (Thompson, California Juvenile Court Deskbook (1972) § 6.6, italics added.)

speaks largely in terms of evidentiary rules and the burden of proof,[7] its primary thrust concerns the attainment of "a working balance between two essential objectives—first, preserving the guarantee of due process to the minor; and second, establishing an informal court atmosphere so that potentially harmful effects of the proceedings are minimized and the minor's receptivity to treatment is encouraged."

As we have suggested (see fns. 5 and 6, *ante,* and accompanying text), the amendment to which we have referred above clearly indicates a legislative intention to tip that balance in the direction of the minor's due process rights and away from informality of procedure in contested cases. Again, we find that intention wholly consistent with the use of advisory[8] juries in appropriate cases.

The People further suggest, in a contention raised for the first time at oral argument, that the statutory scheme manifests an intention that all participation in the fact-finding process in juvenile cases be limited to "uniquely qualified factfinders." They advert to section 553, which sets forth the qualifications requisite to service as a referee in the juvenile court,[9] and they argue that this manifests a pointed legislative concern that if persons other than the juvenile court judge are to make factual determinations in juvenile cases, such persons must possess an appropriate educational and professional background. The use of lay juries, it is urged, runs directly counter to this concern.

This contention rests on a misconception of multiple dimensions. First, it is provided by statute[10] that a duly appointed referee in the juvenile court exercises "the same powers as a judge of the juvenile court." (§ 554.) Such powers extend far beyond the realm of factfinding

[7]Section 701, which, consistent with the Commission's recommendation, originally provided for proof of jurisdictional facts by a preponderance of evidence, was amended in 1971 to require proof beyond a reasonable doubt. (See *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068].)

[8]As concluded by the trial court, the trial of jurisdictional facts by a conventional jury would appear to be inconsistent with the present requirement of sections 701 and 702 that *the court* find whether or not the minor is a person described by sections 600, 601, or 602.

[9]Section 553 provides in general that a referee appointed after 1961 and before 1972 must have been either a lawyer or a supervisory probation officer for five years prior to appointment, and that one appointed after 1972 must be a lawyer for a specified period of time.

[10]See *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406], for a consideration of the extent to which this statutory grant is subject to constitutional limitation.

and include the authority to make, in the first instance at least, both legal and dispositional determinations. The Legislature's concern that persons exercising these broad powers have appropriate educational and professional qualifications surely does little to indicate any opinion on the part of that body on the ability of lay bodies to resolve purely factual questions.

Second, and assuming for the purpose of argument the People's major premise that lay factfinding bodies are less reliable and accurate than trained professional ones (a premise upon which we hasten to express our doubts), we reiterate the fact that it is an *advisory* jury, not a conventional jury, which is here at issue. The factfinder remains the juvenile court judge (or the referee, as the case may be) who remains free to make a binding determination, supported by the evidence, which is directly contrary to suggested findings of the advisory jury. (See *Stearns v. Los Angeles City School Dist.* (1966) 244 Cal.App.2d 696, 725-726 [53 Cal.Rptr. 482].) In these circumstances we fail to see how it can reasonably be said that any concern by the Legislature that the ultimate factfinder possess certain educational and professional qualifications is offended by such a factfinder's use of an advisory lay body to assist in his determination.

In view of the foregoing considerations, we see no reason why the broad grant of authority of section 680, which enjoins and empowers the juvenile court judge to "control all proceedings . . . with a view to the expeditious and effective ascertainment of the jurisdictional facts" should not be read to include within it the discretionary power to empanel an advisory jury to aid in the ascertainment of such facts in appropriate cases.[11] The People and amicus curiae, however, vigorously urge that if such a power is to be recognized, it is the Legislature and not this court which should do so. It is pointed out that there are two bills presently pending before the Legislature which if passed would have significant effect upon the matter of jury trials in juvenile cases. The first of these would require trial by a conventional jury at the request of the minor "[i]f upon conviction the minor would be liable to being placed in actual custody for a period in excess of six months." (Assem. Bill No. 1819.) The second would permit minors over 16 accused of certain

---

[11]In light of this conclusion we do not find it necessary to consider whether a juvenile court also possesses powers inherent in the exercise of equitable jurisdiction including the power to empanel an advisory jury. (See *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 670 [111 Cal.Rptr. 693, 517 P.2d 1157]; *Stearns v. Los Angeles City School Dist., supra,* 244 Cal.App.2d 696, 725-726.)

crimes to be tried as adults without certification to the juvenile court.[12] (Sen. Bill No. 234.)

We are also urged to note that the Judicial Council has undertaken a project dealing with revision of juvenile court practices and procedures; it is argued that this body, even in the absence of legislative action, "would represent a better source for the development of advisory juries than this court." Adverting to numerous asserted constitutional and practical problems which would arise from the use of advisory juries, the People and amicus curiae thus strenuously contend that we should follow the course taken by us in *Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834 [117 Cal.Rptr. 437, 528 P.2d 45], and defer to the Legislature or the Judicial Council in this matter.

We find this argument puzzling. In *Reynolds,* declining to exercise our "inherent power to provide for the orderly administration of justice through judicially declared rules of criminal discovery" (12 Cal.3d at p. 837), we found it inappropriate, in view of "complex and closely balanced questions of state and federal constitutional law" (*id.*) to declare judicially a notice-of-alibi rule. "Given the difficulty of the constitutional questions posed by notice-of-alibi procedures," we concluded, "it is far better for this court to pass judgment, if and when necessary, on an integrated legislative document than on our own conditional decree by which we might seek to smooth the constitutionally rough edges of the order of the court below." (12 Cal.3d at p. 846.)

In the instant case, by contrast, the "integrated legislative document" is before us. Here there is no occasion for us to exercise rule-making power of any description—rather, we simply interpret the statute before us, concluding as a result of such interpretation that the broad terms of section 680 include a discretionary power in the juvenile court to empanel an advisory jury. As for the "complex and closely balanced questions of state and federal constitutional law" which are here alleged

---

[12]Under present law all persons under 18 years of age at the time the alleged offense was committed must be certified to the juvenile court (§ 604), but the juvenile court may order that a minor over 16 at the time of the alleged offense be tried as an adult upon a finding that the minor is not a fit and proper subject to be dealt with under the provisions of the juvenile court law. (§ 707.) Senate Bill No. 234, if enacted, would make the matter of certification to the juvenile court a matter of discretion in the originating court when the minor is over 16 at the time of the alleged offense and is charged with any of certain enumerated serious crimes.

to exist,[13] we note the conspicuous absence of any claim by any party to this proceeding that his constitutional rights have been infringed by the order in question. In short, we conclude that the efforts of the People and amicus curiae to press the instant case into the *Reynolds* mold are wholly and utterly misguided.

The fact that, as pointed out above, the Legislature is currently considering measures relating to jury trial in matters concerning juveniles cannot, of course, affect our responsibility to construe the statute before us. Such legislative interest, doubtless stemming from the essentially nationwide dissatisfaction and disillusionment with juvenile court systems which was given such eloquent expression in *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], and *McKeiver v. Pennsylvania, supra,* 403 U.S. 528, may indeed result in the institution of conventional jury trials in certain cases involving juveniles.[14] Indeed, such an innovation would be wholly consistent with modern scholarly opinion based upon recent factual studies.[15] Our function, however, is not to discuss the law as it may be in the future but to interpret the law which presently exists. In so doing we have concluded, as indicated above, that that law permits the empanelment of a purely advisory jury in appropriate cases to assist the juvenile court to discharge its capacity as the ultimate factfinder in juvenile court proceedings.

[13]Amicus curiae, in the course of an ambitious attempt to indicate constitutional considerations which attend the use of advisory juries, postulates the case wherein the minor's request for an advisory jury is denied and suggests that violation of the minor's equal protection and due process rights might result. Suffice it to say that we are aware of no case in which the sound exercise of statutorily invested discretion has been held to result in a denial of equal protection or due process when the advantage denied by such exercise is of less than constitutional dimension.

[14]As the high court said in *McKeiver,* "[i]n this field, as in so many others, one perhaps learns best by doing. We are reluctant to disallow the States to experiment further and to seek in new and different ways the elusive answers to the problems of the young, and we feel that we would be impeding that experimentation by imposing the jury trial. The States, indeed, must go forward. If, in its wisdom, any State feels the jury trial is desirable in all cases, or in certain kinds, there appears to be no impediment to its installing a system embracing that feature. That, however, is the State's privilege and not its obligation." (403 U.S. at p. 547 [29 L.Ed.2d at p. 662].)

[15]See, e.g., Carr, *Juries for Juveniles: Solving The Dilemma* (1971) 2 Loyola U. L.J. 1; Paulson, *Kent v. United States: The Constitutional Context of Juvenile Cases,* 1966 Sup. Ct. Rev. 167; Note, *The Supreme Court, 1970 Term, Jury Trials in Juvenile Proceedings* (1971) 85 Harv.L.Rev. 38, 113; Note, *McKeiver v. Pennsylvania: A Retreat in Juvenile Justice* (1972) 38 Brooklyn L.Rev. 650. It is notable that Professor Monrad G. Paulson, a foremost authority in the area of juvenile justice, appears to have altered his oft-quoted former view that the use of juries in juvenile proceedings would inject an unwarranted degree of formality without achieving significant corresponding benefits. (Compare, Paulsen, *Fairness To The Juvenile Offender* (1957) 41 Minn.L.Rev. 547, 559, with Paulsen, *Kent v. United States: The Constitutional Context of Juvenile Cases, supra,* 1966 Sup.Ct.Rev. 167, 186.)

We recognize that the use of advisory juries in juvenile court proceedings will inevitably involve problems of a practical nature relating to the empanelment and supervision of such juries, including matters of challenges and instructions. We believe, however, that pending any future legislative or judicial developments problems of this kind are best left to the sound discretion of the juvenile court judge who chooses to empanel an advisory jury to assist in the ascertainment of jurisdictional facts. Few difficulties are likely to arise in this area in light of the fact that the advisory jury by its nature is merely an adjunct to the juvenile court in its function as the ultimate fact-finder pursuant to sections 701 and 702.

## II

■ Having concluded that the broad provisions of section 680 include a discretionary power on the part of the juvenile court to empanel an advisory jury to assist in the determination of jurisdictional issues, we now turn to the question whether it was an abuse of discretion to order such a jury to be empaneled in the instant case.

In its Recommendation No. 11 (set forth in substance in fn. 4, *ante*) the Commission, in a sentence to which we have adverted above, expressed the frame of reference which it considered fundamental to the sound administration of juvenile justice. "The problem in attempting to establish acceptable juvenile court procedures is to attain a working balance between two essential objectives—first, preserving the guarantee of due process to the minor; and second, establishing an informal court atmosphere so that potentially harmful effects of the proceedings are minimized and the minor's receptivity to treatment is encouraged." It is this "working balance" which must concern the juvenile court in the exercise of the discretionary powers vested in it by section 680.

In the instant case, the juvenile court expressed its full awareness of the subject principle and specifically based its determination upon it. Thus, in making its oral order, the court stated: "In determining whether to exercise such power [i.e., the power to empanel an advisory jury], the court should be guided by and be first satisfied that it would serve the interests of justice to invoke such a procedure without serious impairment of the overall salutary purposes of the non-adversary juvenile court proceedings."

In arriving at its determination in light of this principle, the court considered six specific factors. First, it was noted that the charges against the minor, which had been denied by him, were of a very serious nature—involving among them the murder and sexual abuse of a four-year-old child. Second, it was anticipated that the adjudicatory hearing might involve as many as 40 witnesses, including expert witnesses. Third, the evidence to be presented by the People was to be largely circumstantial in nature. Fourth, the incidents which had given rise to the hearing had received substantial coverage in the various news media, and the minor had been identified by name as a suspect. Fifth, the "potential period of wardship placement" was substantial. And sixth, the hearing was estimated to require from four to five days. On the basis of these considerations the court, making clear reference to the language of section 680, concluded: "In considering the special facts and circumstances in this case presented it appears to this court that the most effective and expeditious ascertainment of facts occurring during the adjudicative stage can best be accomplished by empanelment of a jury to render any [sic] advisory verdict to aid and assist the court during the adjudicative stage only." The court went beyond this finding, however, to relate its determination to the guiding principle to which we have adverted. "[T]o the extent that the use of such advisory jury would inject an additional adversary flavor it is the finding of this court that its potential effect is greatly outweighed by the substantial benefit afforded to the court in utilizing an advisory verdict of the jury under the special facts and circumstances postured in this case."

We are satisfied that the juvenile court in this case made a proper and informed decision and that no abuse of discretion has been shown. In arriving at its determination to empanel an advisory jury, the court addressed itself to considerations which fall into three general categories: (a) the nature and relative difficulty of the factfinding task in the particular case, (b) the seriousness of the charges from the point of view of probable disposition of the minor if they were sustained, and (c) the extent to which any salutary effects attendant upon an informal proceeding remained possible of achievement in the circumstances. Essentially it weighed the considerations in the first two categories against those in the third. On the one hand, the fact that serious charges were to be disputed by a great deal of largely circumstantial evidence indicated that the advantages to be derived from the use of an advisory jury were great. On the other hand, in light of the broad areas of factual and legal dispute, which necessarily would have to be resolved in an adversary setting—and also in light of the loss of confidentiality which

had already occurred—any benefits normally attendant upon an informal proceeding had been rendered speculative. In these circumstances the court was well within its discretion in empanelling the advisory jury. We uphold its order.

We emphasize in closing that our determination today should not operate to render the use of an advisory jury commonplace in section 602 proceedings. In the normal case, where the disputed jurisdictional issues are few and can be resolved with relative ease, the balance may continue to be struck in favor of an informal proceeding without the assistance of a jury. Only in the exceptional case, where the benefits to be derived from the use of an advisory jury far outweigh any benefits of informality and confidentiality which can be achieved in the circumstances, will sound judicial discretion choose to empanel an advisory jury to aid the court. The case before us is such an exceptional case.

The alternative writ of mandate is discharged, and the petition for a peremptory writ is denied.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., and Richardson, J., concurred.

CLARK, J.—I dissent. The majority opinion needlessly moves "the juvenile court process one step closer to an adversary proceeding indistinguishable from a criminal trial." (*In re William F.* (1974) 11 Cal.3d 249, 256-257 [113 Cal.Rptr. 170, 520 P.2d 986] (Clark, J., dissenting).)