[No. F014198. Fifth Dist. July 25, 1991.]

In re CHARLES C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHARLES C., Defendant and Appellant.

[Opinion certified for partial publication.*]

_____

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Statement of Facts and part 2.

954

## COUNSEL

Laurance S. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Susan Rankin Bunting, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEST, P. J.**—After a contested hearing, the juvenile court found true allegations that Charles C., age 17, committed rape in concert (Pen. Code, §§ 264.1, 261, subd. (2)), lewd and lascivious conduct (Pen. Code, § 288, subd. (a)) and unlawful intercourse (Pen. Code, § 261.5). The court found he came within the provisions of the Welfare and Institutions Code[1] section 602 and committed him to the California Youth Authority (CYA) for a maximum

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

term of nine years, less credits for time served. Charles appeals contending (1) his CYA commitment should be limited to six months past the age of majority because he was denied a jury trial, and (2) improper character evidence was admitted. We affirm.

## STATEMENT OF FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

*1. Does the denial of trial by jury in juvenile cases require the minor's CYA confinement be limited to six months beyond the age of majority?*

Charles raises a variation on the claim that a juvenile is entitled to a jury trial. His argument is as follows. There is no right to a jury trial in a juvenile proceeding (*People* v. *Superior Court (Carl W. )* (1975) 15 Cal.3d 271, 285 [124 Cal.Rptr. 47, 539 P.2d 807]), but any person over 18 years of age is entitled to a jury trial if charged with an offense which may result in imprisonment for more than 6 months. (*Duncan* v. *Louisiana* (1968) 391 U.S. 145, 159 [20 L.Ed.2d 491, 501-502, 88 S.Ct. 1444]; *Blanton* v. *City of North Las Vegas* (1989) 489 U.S. 538, 542-544 [103 L.Ed.2d 550, 555-557, 109 S.Ct. 1289, 1292-1293].) The rationale for the different treatment jury-wise for adults and juveniles is the different purposes of the adult and juvenile systems. While the aim of adult incarceration is punishment, a juvenile commitment is geared toward treatment and rehabilitation with the state providing substitute parental care for wayward youths during their *minority*. (*In re Daedler* (1924) 194 Cal. 320, 325-326 [228 P. 467].) However, in 1982, the Legislature enacted provisions allowing minors to be held to age 25 for their juvenile offenses. (§ 607, subd. (b).) Charles argues that since none of the cases holding juveniles are not entitled to trial by jury dealt with a statute authorizing confinement beyond the attainment of majority, those cases are inapplicable when the minor is committed to CYA for a period extending into adulthood. He concludes, "The state of California can not detain Charles [C.] in one of its CYA prisons past his majority unless he has been granted the right to a jury trial."

In *McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976], the Supreme Court held that there is no federal constitutional right to a jury trial in juvenile court. The court reasoned the applicable due

*See footnote, *ante*, page 952.

process standard in juvenile proceedings is fundamental fairness as developed by *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428] and *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068], which emphasized factfinding procedures; but in our legal system, the jury is not a necessary component of accurate factfinding. (*McKeiver v. Pennsylvania, supra*, 403 U.S. at p. 543 [29 L.Ed.2d at pp. 659-660].) Thus, despite disappointments, failures and shortcomings in the juvenile court procedure, a jury trial is not constitutionally required in a juvenile court's adjudicative stage. (*Id.* at p. 545 [29 L.Ed.2d at pp. 660-661].) The high court premised its holding upon the following considerations, among others. First, the court has refrained from holding that all rights constitutionally assured to an adult accused are to be accorded in a juvenile proceeding. Second, compelling a jury trial might remake the proceeding into a fully adversary process and effectively end the idealistic prospect of an intimate, informal protective proceeding. (*Ibid.* [29 L.Ed.2d at pp. 660-661].) Third, imposing a jury trial on the juvenile court system would not remedy the system's defects or greatly strengthen the factfinding function; however, it would tend to place the juvenile squarely in the routine of the criminal process. (*Id.* at p. 547 [29 L.Ed.2d at p. 662].) Fourth, the court was reluctant to say that the juvenile system held no promise or was devoid of any rehabilitative possibilities. The court encouraged the states to experiment to seek answers to the problems of the young and felt that imposing a jury trial requirement would impede that experimentation. (*Ibid.* [29 L.Ed.2d at p. 662].) Fifth, if the jury trial was injected into the juvenile court system, it would bring with it "the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial." (*Id.* at p. 550 [29 L.Ed.2d at p. 663].) Sixth, equating the adjudicative phase of the juvenile proceedings with a criminal trial ignores the aspects of fairness, concern, sympathy and paternal attention inherent in the juvenile court system. (*Ibid.* [29 L.Ed.2d at p. 663].) Finally, if all the formalities of the criminal justice system were imposed on the juvenile court system, there would be little need for its separate existence. (*Id.* at p. 551 [29 L.Ed.2d at p. 664].)

California courts echoed the concerns of the *McKeiver* court and agreed that a jury trial would be counterproductive in juvenile proceedings. See, for example, *In re Clarance B.* (1974) 37 Cal.App.3d 676, 680 [112 Cal.Rptr. 474]—requiring a jury trial in juvenile proceedings would result in placing the minor in the full adversary process and would end the informal and private proceeding which is necessary to accomplish the policies underlying the existence of the juvenile court; *In re T.R.S.* (1969) 1 Cal.App.3d 178, 182 [81 Cal.Rptr. 574]—to adopt trial by jury in the juvenile court would " 'introduce a strong tone of criminality into the proceedings,' " destructive of the beneficial purposes of the Juvenile Court Law.

Despite the legislative changes extending juvenile court jurisdiction over certain committed wards until the age of 25, the reasoning of the *McKeiver* court remains persuasive. Neither the extension of juvenile court jurisdiction nor the addition of punishment as an expressed purpose of the Juvenile Court Law changes the overriding purpose or design of the juvenile justice system warranting the imposition of a jury trial requirement.

### Confinement After Age 18

■ Under section 602, the juvenile court has original jurisdiction over any minor accused of committing a crime before his or her 18th birthday. Once the juvenile court has jurisdiction over the minor, its jurisdiction may be extended until the minor's 21st birthday (§ 607, subd. (a)), or if the minor has been committed to CYA for an offense listed in section 707, subdivision (b), jurisdiction may be extended until the person reaches 25 years of age. (§ 607, subd. (b).) The purpose of the extended jurisdiction is to enable the juvenile court to carry out its program of rehabilitation and training. (*People v. Price* (1969) 1 Cal.App.3d 982, 987 [82 Cal.Rptr. 55].)

■ Charles submits this extended jurisdiction and confinement into adulthood is unconstitutional in light of the lack of a jury trial. He cites *In re Gary W.* (1971) 5 Cal.3d 296 [96 Cal.Rptr. 1, 486 P.2d 1201] in support of his argument, but that case is distinguishable. *Gary W.* dealt with sections 1800-1803 which permit CYA to petition the committing court (either juvenile or superior) for an order directing CYA to retain control over an individual beyond the date on which his or her release would otherwise be mandatory "if the ward is found to be physically dangerous to the public." (5 Cal.3d at p. 300.) The court found the commitment of these wards as dangerous persons was sufficiently similar to the involuntary civil commitment of other adults so as to require that they receive the same protection as the other adults, namely the right to a jury trial. The court, however, noted the limitations of its decision and stated, ". . . the commitment proceeding here applies only to adults. It is in no way a juvenile proceeding, nor is it an extension of a prior juvenile court proceeding." (*Id.* at p. 305.) The question before the court in a juvenile proceeding under section 602 is whether the juvenile is a person described by that section, a minor who has violated a law. The question before the court in a section 1800 proceeding is whether an adult is physically dangerous to the public because of a physical or mental abnormality. If section 1800 did not require that the petition be filed in the "committing court," which in many instances was the juvenile court, the proceedings appropriately would be held in the superior court. (5 Cal.3d at pp. 305-306.)

Charles's situation is factually and procedurally distinguishable from Gary's. The section 1800 commitment proceedings for which Gary requested

a jury trial applied only to adults and dealt with an issue independent of the legal question posed in his juvenile court action. On the other hand, Charles's proceedings were in the exclusive arena of the juvenile court and dealt with only juvenile law issues. The cases are simply not comparable.

Charles's contention is more analogous to the term of commitment challenges raised by other youths who felt they received a more onerous disposition in juvenile court than they would have received from the criminal courts. For example, in *In re Eric J.* (1979) 25 Cal.3d 522, 533 [159 Cal.Rptr. 317, 601 P.2d 549], the minor contended that section 726 denied him equal protection of the law by providing that the maximum term of confinement for a juvenile is the longest term imposable on an adult for the same offense, without the necessity of finding circumstances in aggravation which justify imposition of the upper term for adults under Penal Code section 1170, subdivision (b). The court disagreed, holding that minors and adults are not "similarly situated" with respect to their interest in liberty (25 Cal.3d at p. 530), nor are they confined for the same purpose. (*Id.* at p. 531.) Adults are imprisoned for determinate terms as punishment for their offenses; juveniles are confined for indeterminate terms for rehabilitation and treatment, with provision for parole as soon as appropriate. (§ 1176; *Eric J.*, *supra*, at pp. 531-532.)

Likewise, in *In re Robert D.* (1979) 95 Cal.App.3d 767 [157 Cal.Rptr. 339], the issue before the court was whether a term of involuntary commitment imposed by the juvenile court on a minor may exceed that which might have been imposed on an adult who committed the identical unlawful act and was convicted in the criminal courts. (*Id.* at p. 774.) In concluding that imposition of the "maximum term" in CYA did not constitute denial of equal protection of the law, the court reasoned as follows.

"[A] minor[ ] does not have all of the rights, protections, obligations, burdens, risk of jail or prison commitment as does an adult. He faces a juvenile justice system where rehabilitation is the announced legislative purpose. (. . . § 202.) In contrast, the objective in adult incarceration is punishment. (Pen. Code, § 1170, subd. (a)(1);. . .)

"Any parallel between the adult felon and the juvenile delinquent who have violated the same penal statute ends at the point of beginning of two separate, distinct punishment/rehabilitation statutory schemes. The commitment of the youth, processed through the juvenile court, to the Youth Authority for the maximum period under . . . section 731 is in no way the equivalent of the commitment of the adult to prison for the same crime for the upper term based upon aggravation factors.

"When the juvenile is committed for the maximum period, he is in fact being committed for an indeterminate period. The adult sent to prison for the upper 'term prescribed' will be confined for that specific period less any behavior-performance credits. (Pen. Code, §§ 2930-2931.) . . . [¶] In contrast, to the juvenile, the 'maximum' term is simply the outside time limit for a statutory program aimed directly at rehabilitation. . . . [¶] In order to achieve its treatment, rehabilitative goal, the Youth Authority has wide latitude, broad discretionary powers in the treatment and discharge of persons committed to it . . . .

"While equal protection principles prohibit 'physical confinement' beyond the maximum period authorized for a similarly offending adult (. . . § 731), . . . section 726 provides 'nothing in this section shall be construed to limit the power of the court to retain jurisdiction over a minor and to make appropriate orders pursuant to Section 727 for the period permitted by Section 607.' . . . Subdivision (b) of . . . section 607 provides: 'The court may retain jurisdiction over any person who is found to be a person described in Section 602 . . . by reason of the violation, when he was 16 years of age or older, of any of the offenses listed in subdivision (b) of Section 707 until such person attains the age of 23 years if the person was committed to the Youth Authority.' " (*In re Robert D., supra*, 95 Cal.App.3d at pp. 774-775, fns. omitted.)[2]

". . . The Legislature has in fact created two distinct systems: one for adult criminals who are to be punished by a fixed period of incarceration and the other a totally separate system for juveniles who are to be rehabilitated by treatment in the Youth Authority. The differences between these two systems are specific concrete demonstrations of the underlying legislative determination that minors are inherently different from adults and therefore should be treated differently." (*In re Robert D., supra*, 95 Cal.App.3d at p. 776.)

"The fundamental . . . purpose of the juvenile justice system in this state is the treatment and rehabilitation of youths. ( . . . §§ 1000, 1176.) Reason and common experience tell us the prime necessity to achieve this goal is a system as flexible as financial means and constitutional restraints allow . . . . [T]ime requirements necessary to effect rehabilitation by their very nature demand flexibility. Punishment can be meted out in precise time units but modification of behavior is not a task subject to similar quantification." (*In re Robert D., supra*, 95 Cal.App.3d at pp. 776-777.)

The court concluded that imposition of the "maximum term" for care and treatment in a CYA facility does not constitute a denial of equal protection of

[2]The 1982 amendment substituted "commission" for "violation, when he was 16 years of age or older," and "25 years" for "23 years."

the law. The statutory scheme and case authority not only justified but demanded a different treatment approach for youths. (*In re Robert D.*, *supra*, 95 Cal.App.3d at p. 778.)

Thus, case law tells us the justification for a juvenile commitment which extends into adulthood lies in the rehabilitative function of the juvenile court system. Implicit in the authority for commitments beyond minority is the belief that rehabilitation may not be possible if an older minor—16 or 17 years of age—cannot remain under the jurisdiction of the juvenile court for an adequate period of time to complete the necessary rehabilitative programs available at CYA. However, the fact that a minor may be confined into adulthood for his juvenile offenses does not compel a jury trial. Since the factfinding occurs when the accused is a minor, all the reasons for not requiring a jury trial set out in *McKeiver*—the confidentiality, informality, flexibility and speed of the hearing at which the factfinding takes place— apply regardless of the possible term of commitment. Further, since the minor is actually sentenced to an indeterminate term, he is not similarly situated to the adult who faces a determinate term of six months or more. Thus, the fact that a juvenile offender may be committed to CYA for a term extending into his adulthood does not warrant a jury trial in the adjudicative phase of the proceedings.

### Increased Emphasis on Punishment

In 1984, the Legislature amended the purpose of the Juvenile Court Law and put an increased emphasis on punishment. (§ 202.) However, the reference to punishment did not alter the overall rehabilitative aspect of the juvenile justice system. (*In re Ismael A.* (1989) 207 Cal.App.3d 911, 915-920 [255 Cal.Rptr. 126].) In fact, the new language only reinforces the different purposes underlying the juvenile and adult procedures:

"Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment and guidance which is consistent with their best interest, which holds them accountable for their behavior, and which is appropriate for their circumstances. *This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter.*" (§ 202, subd. (b), italics added.)

The state's punishment of minors is a "rehabilitative tool" (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 57 [260 Cal.Rptr. 258]), distinguishable from the criminal justice system for adults which has a purely punitive purpose separate from its rehabilitative goals. (*In re Samuel V.* (1990) 225 Cal.App.3d 511, 517 [277 Cal.Rptr. 14].) Thus, even though punishment is now an

express purpose of the Juvenile Court Law, the underlying purpose of the juvenile system remains sufficiently distinct from the adult criminal system to support confinement at CYA rehabilitative programs into adulthood for juvenile offenses without a jury trial.

2. *Was improper character evidence admitted?*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Thaxter, J., and Bianchi, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied October 23, 1991.

---

\*See footnote, *ante*, page 952.

†Retired judge of the Kern Superior Court sitting under assignment by the Chairperson of the Judicial Council.