[No. B116195. Second Dist., Div. Five. Feb. 19, 1998.]

In re MYRESHEIA W., a Person Coming Under the Juvenile Court Law.
MYRESHEIA W., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent, v.
THE PEOPLE, Real Party in Interest.

## COUNSEL

Andrew M. Stein and Jonathan E. Roberts for Petitioner.

No appearance for Respondent.

Gil Garcetti, District Attorney, Patrick D. Moran and Brent Riggs, Deputy District Attorneys, for Real Party in Interest.

## OPINION

### INTRODUCTION

**JACKSON, J.**\*—Myresheia W. filed this mandate petition challenging the respondent court's order in juvenile delinquency proceedings denying her a right to a jury trial. Petitioner was charged with one count of the crime of second degree robbery, in violation of Penal Code section 211.[1] Petitioner alleges that with the passage of the "Three Strikes" legislation, she should be entitled to a jury trial because of the consequences delinquency adjudications pose for serious juvenile offenders. We disagree and deny the writ.

### DISCUSSION

Juveniles have traditionally not been entitled to jury trials. We review the chronological development of the law in this regard. In the habeas corpus proceeding of *In re Daedler* (1924) 194 Cal. 320 [228 P. 467], the California Supreme Court denied habeas corpus relief, holding that the minor had no right to a jury trial. Article I, section 16 of the California Constitution provides for jury trials, but it has not been applied to juveniles.[2] The *Daedler* court emphasized that because juvenile proceedings are not penal in nature, juveniles do not have the same rights that adults have in criminal proceedings. (194 Cal. at pp. 323-331.) Juveniles are not convicted

---

\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] Article I, section 16 of the California Constitution currently reads, in full: "Trial by jury is an inviolate right and shall be secured to all, but in a civil cause three-fourths of the jury may render a verdict. A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel. In a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute. [¶] In civil causes the jury shall consist of 12 persons or a lesser number agreed on by the parties in open court. In civil causes in municipal or justice court the Legislature may provide that the jury shall consist of eight persons or a lesser number agreed on by the parties in open court. [¶] In criminal actions in which a felony is charged, the jury shall consist of 12 persons. In criminal actions in which a misdemeanor is charged, the jury shall consist of 12 persons or a lesser number agreed on by the parties in open court."

of a crime and on that basis sentenced as criminals. Instead, they are found to have committed criminal acts and on that basis declared to be wards of the court. The Supreme Court noted the traditional emphasis in juvenile law has been rehabilitation and not punishment. (*Id.* at p. 326.)

The United States Supreme Court in *In re Gault* (1967) 387 U.S. 1 [87 S.Ct. 1428, 18 L.Ed.2d 527] did hold that the due process clause of the Fourteenth Amendment afforded certain rights to minors, including the right to receive adequate notice of the charges, right to have counsel, the privilege against self-incrimination, and the right to confront one's accuser. In *Gault*, which held a minor is entitled to counsel, the Supreme Court explained the limited extent of its ruling citing its prior holding in *Kent* v. *United States* (1966) 383 U.S. 541, 562 [86 S.Ct. 1045, 1057, 1057, 16 L.Ed.2d 84]: "We announced with respect to such waiver proceedings that while 'We do not mean . . . to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.' We reiterate this view, here in connection with a juvenile court adjudication of 'delinquency,' as a requirement which is part of the Due Process Clause of the Fourteenth Amendment of our Constitution." (*In re Gault, supra*, 387 U.S. at pp. 30-31 [87 S.Ct. at p. 1445], fn. omitted.) Further, three years later, the United States Supreme Court held that due process also requires proof beyond a reasonable doubt in delinquency proceedings. (*In re Winship* (1970) 397 U.S. 358, 364-368 [90 S.Ct. 1068, 1073-1075, 25 L.Ed.2d 368].)

In 1971, the United States Supreme Court recognized that juvenile court proceedings are different from criminal proceedings. "[T]he applicable due process standard in juvenile proceedings . . . is fundamental fairness [with] an emphasis on factfinding procedures." (*McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 543 [91 S.Ct. 1976, 1985, 29 L.Ed.2d 647] (plur. opn. of Blackmun, J.) (hereafter *McKeiver*).) Using the standard of *McKeiver*, the United States Supreme Court concluded "that trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement." (*Id.* at p. 545 [91 S.Ct. at p. 1986] (plur. opn. of Blackmun, J.); see also *id.* at p. 557 [91 S.Ct. at p. 1992] (conc. opn. of Harlan, J.).) The *McKeiver* court discussed elements in the juvenile process which made the juvenile's right to a jury trial less essential to the protection of the accused's rights in juvenile proceedings than in normal criminal proceedings. The United States Supreme Court's plurality opinion explained the factors present in the Pennsylvania juvenile court system: "(1) Although realizing that 'faith in the quality of the juvenile bench is not an entirely satisfactory substitute for due process,' [citation], the judges in the juvenile courts 'do take a different view

of their role than that taken by their counterparts in the criminal courts.' [Citation.] (2) While one regrets its inadequacies, 'the juvenile system has available and utilizes much more fully various diagnostic and rehabilitative services' that are 'far superior to those available in the regular criminal process.' [Citation.] (3) Although conceding that the post-adjudication process 'has in many respects fallen far short of its goals, and its reality is far harsher than its theory,' the end result of a declaration of delinquency '*is* significantly different from and less onerous than a finding of criminal guilt' and 'we are not yet convinced that the current practices do not contain the seeds from which a truly appropriate system can be brought forth.' (4) Finally, 'of all the possible due process rights which could be applied in the juvenile courts, the right to trial by jury is the one which would most likely be disruptive of the unique nature of the juvenile process.' It is the jury trial that 'would probably require substantial alteration of the traditional practices.' The other procedural rights held applicable to the juvenile process 'will give the juveniles sufficient protection' and the addition of the trial by jury 'might well destroy the traditional character of juvenile proceedings.' " (*McKeiver*, *supra*, 403 U.S. at pp. 539-540 [91 S.Ct. at p. 1983] (plur. opn. of Blackmun, J.).)

Before 1975, the California Supreme Court held that a jury trial was inappropriate in juvenile adjudications. (*Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 376 [93 Cal.Rptr. 752, 482 P.2d 664] citing *In re T. R. S.* (1969) 1 Cal.App.3d 178, 181-182 [81 Cal.Rptr. 574].) In 1975, the California Supreme Court construed Welfare and Institutions Code section 680 as authorizing juvenile court discretion to impanel *advisory* juries in jurisdictional hearings. (*People* v. *Superior Court* (*Carl W.*) (1975) 15 Cal.3d 271 [124 Cal.Rptr. 47, 539 P.2d 807].) However, the court noted that: "As all parties hereto are fully aware, neither the state nor the federal Constitution guarantees a jury trial in a juvenile proceeding." (*Id.* at p. 274.) There was no suggestion or indication by the court that the discretionary use of an advisory jury in an exceptional case would in any way alter the traditional nature of juvenile proceedings.

On November 8, 1994, California voters passed Proposition 184, which added section 1170.12 to the Penal Code. It was similar to Assembly Bill No. 971 (1993-1994 Reg. Sess.), passed by the California Legislature on March 7, 1994. (§ 667, subds. (b)-(i).) Both laws provide for increased sentences when defendants are convicted of a current felony and one or more specified priors are found to be true. If a defendant is convicted of a current felony and one "strike" prior is proved, the defendant's sentence is doubled (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)); if two or more "strike" priors are proved, the sentence is at least twenty-five years to life in prison. (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2).)

The case of *People* v. *Davis* (1997) 15 Cal.4th 1096, 1100-1102 [64 Cal.Rptr.2d 879, 938 P.2d 938], sets the ground rules on the use of juvenile adjudications as strike priors. An order adjudging a minor to be a ward of the juvenile court can be deemed a conviction of a crime for purposes of the Three Strikes law if the order qualified under the remainder of the Three Strikes law. Only certain juvenile adjudications qualify as priors under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12): " 'A prior juvenile adjudication shall constitute a prior felony conviction for purposes of sentence enhancement if: [¶] (A) The juvenile was 16 years of age or older at the time he or she committed the prior offense. [¶] (B) The prior offense is listed in subdivision (b) of Section 707 of the Welfare and Institutions Code or described in paragraph (1) . . . or (2) . . . as a felony. [¶] (C) The juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law. [¶] (D) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code.' " (15 Cal.4th at p. 1100; § 667, subd. (d)(3); see also § 1170.12, subd. (b)(3).)

The minor argues that the *Davis* opinion and the collateral effect of a juvenile court judge sustaining a petition alleging an offense which would be a serious crime if charged against an adult fundamentally change the juvenile court law so that there is now a jury trial right. We disagree. First, given the statutory language, the offenses which qualify for treatment as strike priors constitute a relatively small portion of the juvenile court case load. The strike law would apply only in cases in which a minor was at least 16 years of age, charged with a serious or violent felony offense, and is dealt with in juvenile proceedings rather than adult court. At the outset, the law *presumes* these minors unfit for juvenile court. (Welf. & Inst. Code, § 707, subds. (b) & (c).)[3]

Second, prior to the adoption of the Three Strikes law there was authority for the adult courts to consider juvenile proceedings in determining the base term for sentencing.[4] Pursuant to rule 421 of the California Rules of Court, prior sustained petitions can be considered by a trial court in finding circumstances in aggravation for purposes of setting the base term of a sentence. Federal law also allows the consideration of juvenile records in determining an appropriate sentence. In *U. S.* v. *Johnson* (D.C. Cir. 1994) 28

---

[3]Even if a prosecutor planned to use a juvenile adjudication in an adult case, it still may be difficult to prove prior juvenile adjudications because the juvenile court records are sealed after a minor attains adulthood.

[4]California Rules of Court rule 421(b)(2) provides as follows: "The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness."

F.3d 151 [307 App.D.C. 284], the defendant was convicted of possession of cocaine with the intent to distribute. Under federal sentencing guidelines, defendant was awarded 10 points, 9 of which were based on his juvenile record.

Third, the California juvenile court system remains unique and different from the adult court system. The Welfare and Institutions Code continues to place special duties upon California juvenile court judges and other participants in the juvenile court system, separate and apart from those placed upon criminal court judges pursuant to Welfare and Institution Code section 202, subdivision (d).[5] Welfare and Institutions Code section 202, subdivision (a) provides that reunification of a minor with his or her family is a primary objective. Welfare and Institutions Code section 202, subdivision (b) provides that if a minor has been removed from the custody of his or her parents, family reunification and family preservation are appropriate goals for the juvenile court to consider when determining the disposition of a minor under the jurisdiction of a juvenile court as a consequence of delinquent conduct when those goals are consistent with his or her best interests and the best interests of the public. California law requires juvenile court personnel to take a different view of their role than that taken by their counterparts in the criminal courts. (Cal. Rules of Court, rule 1400(b).)[6]

The California juvenile system has available diagnostic and rehabilitative services that are significantly better than those available in adult criminal proceedings. The options available to a juvenile court hearing officer after a minor has been declared a ward of the court are numerous, including diagnostic studies, home on probation, suitable placement, detention pursuant to *In re Ricardo M.* (1975) 52 Cal.App.3d 744, 752 [125 Cal.Rptr. 291], camp placement, and commitment to the California Youth Authority.

The purpose of juvenile proceedings remains markedly different from that of adult proceedings. The state's purpose in juvenile proceedings is a rehabilitative one distinguishable from the criminal justice system for

---

[5]Welfare and Institutions Code section 202, subdivision (d) provides: "Juvenile courts and other public agencies charged with enforcing, interpreting, and administering the juvenile court law shall consider the safety and protection of the public and the best interests of the minor in all deliberations pursuant to this chapter. Participants in the juvenile justice system shall hold themselves accountable for its results. They shall act in conformity with a comprehensive set of objectives established to improve system performance in a vigorous and ongoing manner."

[6]California Rules of Court, rule 1400(b) provides: "The rules in this division are adopted by the Judicial Council pursuant to its constitutional and statutory authority to adopt rules for court administration, practice, and procedure, not inconsistent with statute. These rules are designed to implement the purposes of the juvenile court law by promoting uniformity in practice and procedure and by providing guidance to judges, referees, attorneys, probation officers, and others participating in the juvenile court."

adults, which has a purely punitive purpose separate from its rehabilitative goals. (*In re Charles C.* (1991) 232 Cal.App.3d 952, 955-956 [284 Cal.Rptr. 4].) The proceedings are intended to secure for the minor such care and guidance as will best serve the interests of the minor and the state and to impose upon the minor a sense of responsibility for his or her actions. The purpose of imprisonment pursuant to criminal law is punishment. (*People* v. *West* (1984) 154 Cal.App.3d 100 [201 Cal.Rptr. 63].) While part of the juvenile justice system does include punishment in certain cases, it does not change the primary purpose of juvenile proceedings from that of preserving and promoting the welfare of the child. In juvenile law, ". . . the reference to punishment did not alter the overall rehabilitative aspect of the juvenile justice system." (*In re Charles C.*, *supra*, 232 Cal.App.3d at p. 960.)

The Three Strikes use of a juvenile adjudication in sentencing does not alter the treatment purpose of the previous juvenile adjudication. Even considering the Three Strikes potential, the end result of a declaration of delinquency remains different from a finding of criminal guilt in adult proceedings.

When the Legislature and the voters of the State of California enacted the Three Strikes law, they did not require jury trials for minors. We decline to add the requirement of jury trial in juvenile adjudications simply as a result of the fact that if a minor commits certain crimes as an adult, the juvenile adjudications, in limited situations, may result in additional punishment for the now adult offender. The collateral impact of the Three Strikes law does not change the fundamentally different nature of juvenile and adult court proceedings. Hence, a juvenile adjudication without a jury trial does not violate a juvenile's due process rights.

## DISPOSITION

The petition for writ of mandate is denied.

Turner, P. J., and Armstrong, J., concurred.

Petitioner's application for review by the Supreme Court was denied June 10, 1998.